USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-1169 UNITED STATES, Appellee, v. JAMES F. BRENNAN, Defendant, Appellant. ____________________ No. 92-1170 UNITED STATES, Appellee, v. J. EDWARD MCHUGH, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr, and Stahl, Circuit Judges. ______________ ____________________ Philip X. Murray with whom Lorusso & Loud was on brief for __________________ ________________ appellant Brennan. Wade M. Welch for appellant McHugh. _____________ S. Theodore Merritt, Assistant United States Attorney, with whom ___________________ A. John Pappalardo, United States Attorney, was on brief for appellee. __________________ ____________________ June 3, 1993 ____________________ STAHL, Circuit Judge. On September 18, 1990, a _____________ federal grand jury returned a multiple count indictment against defendant-appellant J. Edward McHugh, a former senior vice-president and loan officer of the Cambridgeport Savings Bank ("CSB"), and defendant-appellant James F. Brennan, a borrower of large sums of money from CSB. The indictment charged both defendants with one count of conspiracy to commit bank fraud and to willfully misapply bank funds; McHugh with one count of bank fraud, six counts of willful misapplication of bank funds, and four counts of making false entries in bank records; and Brennan with two counts of making false statements to a lending institution, one count of aiding and abetting McHugh's bank fraud, and six counts of aiding and abetting McHugh's willful misapplication of bank funds. After a twenty-day trial, a jury returned verdicts of guilty against both defendants on most of the counts. It did, however, acquit McHugh on two counts of willful misapplication and Brennan on one count of aiding and abetting a willful misapplication of bank funds. Following the verdict, the trial judge issued a comprehensive, twenty-seven page memorandum and order denying Brennan's pending motion for acquittal on all counts charged, but granting McHugh's pending motion for acquittal insofar as it related to the four counts for making false entries in -2- 2 bank records.1 After a two-day sentencing hearing, Brennan was sentenced to forty-one months in prison and McHugh was sentenced to a year and a day in prison. On appeal, McHugh and Brennan raise a host of challenges to the trial proceedings. Their complaints can be loosely divided into two categories: (1) there was insufficient evidence to support certain of their convictions, and (2) a number of decisions of the trial judge regarding the parameters of the trial, the admissibility of certain disputed evidence, and the jury instructions constituted reversible error. Brennan also advances miscellaneous arguments that he was victimized by constitutionally infirm legal representation at trial and that his sentence was unlawful. After carefully reviewing the voluminous record in the light of appellants' contentions, we affirm. I. I. __ BACKGROUND2 BACKGROUND2 __________ Because attempting to recount the evidence in this case would be both unnecessary and inherently Sisyphean, we ____________________ 1. McHugh's motion, which sought acquittal on all counts charged, was otherwise denied. 2. As is always the case when we consider whether there was sufficient evidence to support a conviction, we review the evidence in the light most favorable to the government and resolve all credibility issues in favor of the verdict. See, ___ e.g., United States v. Guzman-Rivera, No. 92-1855, slip op. ____ ______________ _____________ at 6 (1st Cir. April 9, 1993). -3- 3 cut to the heart of the matter. McHugh was hired by CSB on May 24, 1987, as a senior vice-president and senior loan officer in charge of commercial lending. At the time of McHugh's hiring, CSB had a relatively small commercial lending department. Among other things, McHugh was charged with increasing the volume of commercial loans. To that end, CSB's Board of Investment ("the Board") provided McHugh with a personal lending authority of up to $500,000 per borrower. Commercial loans in excess of $500,000 to any single borrower could not, however, be made without prior Board approval. On June 5, 1987, Brennan met with McHugh and requested a $70,000 unsecured loan from CSB.3 In connection with the requested loan, Brennan provided CSB with a signed Personal Financial Statement ("PFS"). The PFS contained a preamble indicating that the borrower would notify the bank of material changes in his/her financial condition. Evidence introduced at trial revealed that Brennan made statements on his PFS pertaining to his income, real estate holdings, notes payable to others, and contingent liabilities that were false both at the time they were submitted and throughout Brennan's relationship with CSB. McHugh approved the loan and, in accordance with the agreed upon procedures, presented it to the Board. The Board subsequently signed off on it. On the ____________________ 3. McHugh and Brennan had a prior business relationship when McHugh was a senior lender at First Mutual Bank. -4- 4 term sheet which was required for each loan made, McHugh noted that the purpose of the $70,000 loan was "[t]o assist in the purchase of stock in Harbor Group, Inc."4 Evidence suggested, however, that Brennan used the loan to cover overdrafts he had written at the Yankee Bank. So began a relationship that, throughout the remainder of 1987, led to the extension of nine additional loans by McHugh to Brennan, persons closely affiliated with Brennan, or Brennan-controlled entities. The dates, amounts, and persons/entities who received these subsequent loans we summarize as follows: 1. A July 17, 1987, loan to Brennan for approximately $250,000; 2. A July 20, 1987, loan to Brennan for approximately $100,000; 3. An August 3, 1987, loan to Brennan for approximately $500,000; 4. An August 11, 1987, loan to JoAnn Brennan, the defendant's wife, for approximately $332,000; 5. A September 1, 1987, loan to Charles White, a friend of Brennan, for approximately $400,000;5 6. A September 2, 1987, loan to Joseph Hoffman, a business associate of Brennan, for approximately $500,000;6 7. A September 22, 1987, loan to the Harbor Group for approximately $500,000; ____________________ 4. The Harbor Group was a Brennan-controlled company organized primarily to acquire and sell other companies. 5. Although White was the nominal borrower of the $400,000, the evidence reveals that the money was wired by CSB directly to an account maintained by Brennan at the Shore Bank. 6. Again, although Hoffman was the nominal borrower of the $500,000, the evidence shows that the money was wired directly by CSB to Brennan's account at the Shore Bank. -5- 5 8. An October 30, 1987, loan to the Harbor Group for approximately $550,000; and 9. A December 31, 1987, loan to Brennan for approximately $225,000. Evidence at trial revealed that Brennan used the proceeds of many of these loans to pay off debts, both to CSB and elsewhere, rather than for the purposes recorded on the relevant term sheets. The evidence also indicated or tended to indicate (1) that many of Brennan's repayment checks bounced but were redeposited at McHugh's direction; (2) that McHugh did not bring these loans and their interconnected nature to the attention of either the Board or James Keegan, CSB's president; (3) that McHugh took affirmative steps to conceal from others at the bank Brennan's problems repaying the loans; (4) that McHugh exceeded his loan authority in making some of these loans; (5) that McHugh made and structured some of these loans in order to circumvent his lending authority, and so that he would not have to bring them to the Board's attention; (6) that no loan file or term sheet was created for the JoAnn Brennan loan; (7) that the loans to JoAnn Brennan and Charles White were made with little or no inquiry into or knowledge of the named debtors' actual abilities to repay the loans; (8) that McHugh knowingly caused false purposes for the White and Hoffman loans to be recorded on their respective term sheets; (9) that McHugh was aware that JoAnn Brennan, White, and Hoffman expected James Brennan to repay the loans taken out in their -6- 6 names; (10) that the $550,000 loan to the Harbor Group, which was guaranteed by Brennan, was made to disguise the fact that certain loans to Brennan and Brennan-controlled interests were delinquent; (11) that, with regard to the White loan, McHugh directed that Brennan funds be used to make an overdue interest payment; and (12) that, with regard to the White loan, Brennan furnished CSB with a PFS, purportedly on White's behalf, which was riddled with false statements. During the first week in March of 1988, Keegan became aware that many of the aforementioned loans were both interconnected and delinquent, ordered internal and external audits, and instructed McHugh to send letters to the named borrowers demanding payment. McHugh was terminated on March 11, 1988. The financial loss to CSB exceeded $2,200,000. II. II. ___ DISCUSSION DISCUSSION __________ A. Sufficiency of the Evidence A. Sufficiency of the Evidence _______________________________ McHugh argues that there was insufficient evidence to support any of his convictions. Brennan contends that there was insufficient evidence to support his convictions on the counts charging conspiracy and making false statements to a lending institution.7 As we have noted, after the ____________________ 7. In his reply brief, Brennan also expresses a desire to join in McHugh's arguments "relative to misapplication and multiplicity." However, it is well settled that "a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed." Rivera- _______ -7- 7 conclusion of the trial, the district court issued a comprehensive, twenty-seven page memorandum and order which, among other things, responded to these very arguments. The memorandum and order surveyed authority pertinent to each of the defendants' arguments, reviewed the evidence in the manner mandated by the appropriate legal standard,8 and clearly articulated both its conclusions and its reasons therefor. We have carefully reviewed the record and, having employed a standard of review which mirrors that applied by the district court to defendants' motions for acquittal, see, ___ e.g., United States v. St. Michael's Credit Union, 880 F.2d ____ _____________ __________________________ 579, 584 (1st Cir. 1989) ("[T]he standard of review for a judgment of acquittal notwithstanding the verdict is identical to the test employed to measure the sufficiency of evidence supporting a guilty verdict.") (brackets in original) (quoting McNatt, 813 F.2d at 502), find ourselves ______ in complete agreement with the conclusions reached by the ____________________ Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992). ________ _____________ Accordingly, Brennan has waived the aforementioned arguments on appeal. 8. Quoting United States v. McNatt, 813 F.2d 499, 502 (1st _____________ ______ Cir. 1987), the district court correctly noted the standard under which the defendants' motions were properly evaluated: "The test is whether, considering the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences that can be drawn from such evidence, a rational trier of fact could have found guilt beyond a reasonable doubt." United States v. Brennan, Cr. _____________ _______ No. 90-10235-WF, slip op. at 3 (D. Mass. Oct. 3, 1991, corrected Oct. 29, 1991). -8- 8 district court. We therefore reject defendants' sufficiency challenges substantially on the basis of the district court's opinion. We pause to address only one issue. In arguing that there was insufficient evidence to support his convictions for willful misapplication of bank funds9 arising out of the October 30, 1987, $550,000 loan to the Harbor Group and the loans extended to White, Hoffman, and JoAnn Brennan, McHugh contends that our previous opinion in Gens, see supra note 9, mandates a ruling in his favor. ____ ___ _____ After careful consideration, we do not agree. In Gens, several bank officers were convicted of ____ willful misapplication under 18 U.S.C. 65610 for making ____________________ 9. As one commentator has noted, "[W]illful misapplication is a term that carries no technical or precisely limited meaning." John K. Villa, Banking Crimes, 3.02[3][c][ii] ______________ (1992); see also United States v. Gens, 493 F.2d 216, 221 ___ ____ _____________ ____ (1st Cir. 1974). It is established in this circuit, however, that "the sine qua non of charges of willful misapplication ____ ___ ___ of bank funds is action taken with the knowledge of harm to, intent to harm, or reckless disregard for, the financial health of the bank." United States v. Fusaro, 708 F.2d 17, _____________ ______ 21 (1st Cir.), cert. denied, 464 U.S. 1007 (1983); see also _____ ______ ___ ____ United States v. Cyr, 712 F.2d 729, 732 (1st Cir. 1983) ("[A] _____________ ___ reckless disregard by a bank official of his bank's interest is sufficient to establish the requisite intent to defraud.") (quoting United States v. Larson, 581 F.2d 664, 667 (7th Cir. _____________ ______ 1980)). The probability that the debtor will repay the misapplied funds is not legally significant. Cyr, 712 F.2d ___ at 732. This authority formed the foundation for the district court's jury instructions on the willful misapplication counts. 10. In relevant part, 18 U.S.C. 656 provides: Whoever, being an officer, director, agent or employee of, or connected in any capacity with any . . . insured bank, . . . willfully misapplies any -9- 9 loans to certain individuals while aware that the proceeds would be turned over to a borrower who, because he had reached the bank's lending limit, could not be loaned any more money. In surveying the indictment and charge to the jury in that case, we first determined that the jury had been instructed to find defendants guilty "if it . . . found that [defendants] granted the loans to the named debtors knowing that the proceeds would be turned over to [the off-limits borrower]." Id. at 221. We then reversed the convictions, ___ noting that "such a finding by itself is not sufficient to __ ______ constitute willful misapplication under 656." Id. ___ (Emphasis supplied). In so doing, we made clear that "where the named debtor is both financially capable and fully understands that it is his responsibility to repay, a loan to him cannot -- absent other circumstances -- properly be ______ _____ _____________ characterized as sham or dummy [and therefore illegal], even if bank officials know he will turn over the proceeds to a third party." Id. at 222. (Emphasis supplied).11 ___ ____________________ of the moneys, funds or credits of such bank . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both[.] 11. On the one count where it was unclear whether the named debtor understood his repayment obligation on the loan at issue, we reversed the conviction but remanded for a new trial. Id. at 223-24. On all the other counts, because the ___ evidence revealed that the loans at issue were to named debtors who clearly were financially capable and understood that it was their obligation to repay, we simply reversed the defendants' convictions. Id. at 223. ___ -10- 10 Although we did not specifically say so, clearly underpinning our holding was the belief that, without more, a rational factfinder cannot infer an intent to defraud the bank on the part of a bank official who simply makes a loan to a financially capable party who understands his/her repayment obligation. See generally id. at 222-23. ___ _________ ___ The facts here are considerably different from those in Gens. As we have stated, there was evidence from which a ____ rational jury could have concluded that JoAnn Brennan, White, and Hoffman did not themselves expect to repay CSB. Moreover, there was evidence suggesting that, with regard to the JoAnn Brennan and White loans, McHugh made little or no effort to determine the actual financial capabilities of the named debtors.12 Thus, with regard to the JoAnn Brennan, White, and Hoffman loans, the jury could have concluded that this was not a situation where, at the time the loans were extended, McHugh knew that the named debtors were both financially capable and fully understood their obligations to ___ repay the loans. See id. at 222. ___ ___ More importantly, this also is a case where there were "other circumstances," see id., which serve to render ___ ___ the reasoning of Gens inapposite. There was evidence from ____ ____________________ 12. Indeed, there was evidence which tended to indicate that White, JoAnn Brennan, and the Harbor Group were not ___ financially capable of repaying the loans on which they were the named debtors. -11- 11 which the jury could have inferred, among other things, (1) that McHugh knowingly caused false purposes for the loans to Charles White and Joseph Hoffman to be recorded on their respective term sheets; (2) that McHugh failed to follow customary bookkeeping procedures in extending the loan to JoAnn Brennan; (3) that McHugh exceeded his loan authority in making the loan to the Harbor Group; and (4) that the loan to the Harbor Group was made for the purpose of disguising the fact that certain loans to Brennan and Brennan-controlled interests were delinquent. Moreover, there was evidence from which a jury could have found that McHugh structured these loans so that he would not have to present them to the Board for prior approval.13 In our view, these are precisely the types of circumstances that could have led the jury to conclude that McHugh, in extending these loans, exhibited "a reckless disregard" of CSB's interests. See Cyr, 712 F.2d at ___ ___ 732; Fusaro, 708 F.2d at 21. Accordingly, we decline to ______ upset McHugh's convictions on the misapplication counts.14 ____________________ 13. Certainly, it is reasonable to infer from this that McHugh thought the Board might not approve of these loans. 14. Relying on a passage in Gens where we took note of a ____ category of cases in which the defendant officials had "assured the named debtor, regardless of his financial capabilities, that they would look for repayment only to the third party who actually received the loan proceeds[,]" see ___ Gens, 493 F.2d at 222, McHugh also argues that because he ____ neither made this type of assurance nor adopted any such assurance made by Brennan to a nominal debtor, his convictions cannot stand. The short answer to McHugh's argument is that, in making this statement in Gens, we were ____ -12- 12 B. Pretrial and Trial Issues B. Pretrial and Trial Issues _____________________________ As we have stated, McHugh and Brennan raise a number of challenges to decisions the district court made regarding the parameters of the trial, the admissibility of certain evidence, and the jury instructions. We discuss each argument in turn. 1. Severance 1. Severance _____________ McHugh contends that the district court committed reversible error in denying his motion for severance. More particularly, McHugh asserts (1) that the number of counts in the indictment created jury confusion; (2) that there was a prejudicial spillover of evidence, particularly "Rule 404(b) evidence,"15 that was admitted solely against Brennan; and ____________________ not setting forth the elements of the offense of misapplication. Instead, we were summarizing those instances where bank officials had been found guilty of willful misapplication for making loans while aware that the proceeds would be passed along to third parties. See generally id. at ___ _________ ___ 221-22. Moreover, despite McHugh's assertion to the contrary, a careful reading of the charge reveals that the trial judge did not instruct the jury that the existence of one of the two aforementioned types of assurances was an element of the crime of willful misapplication. Rather, the court merely informed the jury that if there had been one of these two types of assurances, "misapplication may be found." Thus, even if, as McHugh suggests, there was no evidence tending to indicate either that he assured the named debtors that he would look only to Brennan for repayment or that he had adopted such an assurance made by Brennan, the absence of this type of evidence would not mandate a reversal of his convictions. 15. Fed. R. Evid. 404(b) provides: -13- 13 (3) that the defendants were asserting such inconsistent defenses that severance was warranted. We do not agree. A trial court will grant severance "only upon a strong showing of prejudice." E.g., United States v. Tejeda, ____ _____________ ______ 974 F.2d 210, 219 (1st Cir. 1992). A district court's denial of a motion for relief from prejudicial joinder, see Fed. R. ___ Crim. P. 14,16 is reviewed only for an abuse of discretion, e.g., United States v. Tracy, No. 92-1459, slip op. at 8 (1st ____ _____________ _____ Cir.), cert. denied ___ U.S. ___, 61 U.S.L.W. 3773 (1993), _____ ______ and we will reverse only if the district court's decision "`deprived defendant of a fair trial, resulting in a miscarriage of justice.'" Tejeda, 974 F.2d at 219 (quoting ______ United States v. McLaughlin, 957 F.2d 12, 18 (1st Cir. ______________ __________ 1992)). ____________________ Other crimes, wrongs, or acts. Evidence of Other crimes, wrongs, or acts. other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. 16. In relevant part, Fed. R. Crim P. 14 states: "If it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment . . ., the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ." -14- 14 Briefly stated, we can perceive no abuse of discretion resulting in a miscarriage of justice here. Although this was a complicated case, McHugh has provided us with absolutely no basis for concluding that the jury was confused. Rather, the discriminating verdict suggests to us that the jury was fully able to follow the court's instructions and differentiate between the counts and defendants. See United States v. Boylan, 898 F.2d 230, 246 ___ ______________ ______ (1st Cir.), cert. denied, 498 U.S. 849 (1990). Moreover, we _____ ______ are persuaded that the district court's vigilant and persistent use of limiting instructions throughout the trial, when taken with its final charge instructing the jury to consider the defendants and the counts separately, adequately protected McHugh from the possible effects of prejudicial spillover. See Tejeda, 974 F.2d at 219.17 Finally, to the ___ ______ ____________________ 17. With regard to each of the examples (i.e., the ____ promissory notes to Gloria Campobasso and the Hokal Anstalt, the complaint filed by Judith Eissner, and the testimony of Kenneth D'Amato regarding two conversations with Brennan wherein Brennan stated that McHugh would someday wake up and find a new car in his driveway) McHugh cites where the district court did not deliver a limiting instruction despite McHugh's request for one, we note that the district court explicitly denied McHugh's request because, in its view, the evidence was probative on the question of whether there was a conspiracy between McHugh and Brennan. On appeal, McHugh does not challenge the correctness of this ruling. Accordingly, this evidence, far from being prejudicial because of its potential for "spilling over," must be construed as evidence properly admitted against McHugh on the conspiracy count. With regard to the evidence admitted only against Brennan but referred to by the Government in its closing argument against McHugh, we simply note that McHugh did not -15- 15 extent that McHugh raised any defenses that were inconsistent with the ones presented by Brennan, McHugh has not articulated, nor can we discern, how the inconsistencies were "so prejudicial and the defenses so irreconcilable that the jury unjustifiably . . . infer[red] that this conflict alone demonstrates that both are guilty." United States v. Luciano _____________ _______ Pacheco, 794 F.2d 7, 8 (1st Cir. 1986) (quoting United States _______ _____________ v. Bautista, 731 F.2d 97, 100 (1st Cir. 1984)). Accordingly, ________ we find that the district court did not abuse its discretion in refusing to grant McHugh's severance motion. 2. Evidence Relating to Brennan's Dealings with Other 2. Evidence Relating to Brennan's Dealings with Other ________________________________________________________ Banks and Persons Banks and Persons _________________ Brennan generally argues that "the Government was permitted to introduce excessive evidence relating to other transactions that were not a basis for the indictment." He goes on, however, to specify only three examples of such "excessive" evidence: (1) the testimony of Gloria Campobasso regarding an outstanding promissory note Brennan had given ____________________ object to the Government's line of argument at that time. Accordingly, we review only for plain error. United States _____________ v. Gonzales-Torres, 980 F.2d 788, 791 (1st Cir. 1992). To _______________ establish plain error, McHugh must demonstrate that the error complained of is so compelling that he virtually is assured of succeeding in his appeal, and that the error affected the fundamental fairness and basic integrity of the proceedings in the lower court. See id.; see also Boylan, 898 F.2d at ___ ___ ___ ____ ______ 249 ("The [plain error] doctrine does not allow litigants to be relieved from the `ordinary backfires . . . which may mar a trial record.'") (quoting United States v. Griffin, 818 ______________ _______ F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844 (1987)). _____ ______ We find that the incident at issue, if erroneous, falls far short of the plain error threshold. -16- 16 her, (2) the testimony of Donald Moscone regarding an outstanding promissory note Brennan had given him, and (3) the testimony of K. Dun Gifford regarding a certain loan he had taken out at the First American Bank on Brennan's behalf. At trial, Brennan neither objected to the introduction of any of this evidence nor did he request a limiting instruction. Thus, the admission of this evidence can serve as a basis for reversal only if plainly erroneous. Gonzales-Torres, 980 _______________ F.2d at 791. After carefully reviewing the entire record, we discern no plain error in the district court's admission of this evidence. Accordingly, we reject Brennan's argument for reversal on this ground.18 3. Gifford's Testimony Characterizing Brennan's Actions 3. Gifford's Testimony Characterizing Brennan's Actions ________________________________________________________ Towards Him as "Illegal, Unlawful and Fraudulent" Towards Him as "Illegal, Unlawful and Fraudulent" _________________________________________________ Brennan's next argument, that K. Dun Gifford's testimony that Brennan's dealings with him were "illegal, unlawful and fraudulent" prejudiced him, suffers a similar ____________________ 18. Without elaborating, McHugh also states that the admission of the above-referenced evidence without limiting instructions "was highly prejudicial" to him. However, he neither identifies a specific instance where he was denied a limiting instruction nor attempts to explain why the admission of this evidence was highly prejudicial. Accordingly, we view McHugh's "argument," to the extent that it can be so characterized, as waived. See, e.g., Cohen v. ___ ____ _____ Brown Univ., No. 92-2483, slip op. at 30 (1st Cir. April 16, ___________ 1993) ("Litigants cannot preserve an issue for appeal by raising a pennant and then moving on to another subject."); Ryan v. Royal Ins. Co. of America, 916 F.2d 731, 734 (1st ____ __________________________ Cir. 1990) ("[I]ssues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."). -17- 17 fate. Even if we construe the admission of this statement as erroneous, Brennan's failure to object to it at trial limits our review to the now-familiar plain error rubric. Id. Once ___ again, our review persuades us that the district court's admission of this evidence did not rise to the level of plain error. Accordingly, we decline to reverse on this ground. 4. Prosecutorial Misconduct 4. Prosecutorial Misconduct ____________________________ Brennan makes two separate arguments that prosecutorial misconduct requires a reversal of his conviction. He first claims that he is entitled to a new trial because the prosecutor asked him on cross-examination, without a good faith basis for the question, whether he was terminated from prior employment as a stockbroker at Tucker, Anthony, and Day. The record reveals, however, that George Downey and Brian O'Rourke, who were interviewed by the Federal Bureau of Investigation prior to trial, stated to the interviewing agents that Brennan had been terminated from his employment at Tucker, Anthony, and Day for unauthorized trading. Brennan has not presented us with any evidence suggesting that the Government knew, or should have known, that these statements were false. Accordingly, there is no reason for us to conclude that the question posed to Brennan on cross-examination was not asked in good faith.19 ____________________ 19. Brennan also argues, in a paragraph that can most charitably be described as cryptic, that one of the Government prosecutors made false representations to the -18- 18 Second, Brennan contends that the Government acted improperly in putting into issue, both in its cross- examination of Brennan and in its rebuttal argument, the fact that Brennan did not introduce into evidence any records corroborating certain aspects of his testimony. In Brennan's view, such actions apparently were tantamount to making a comment on Brennan's failure to testify and thereby shifted the burden of proof from the Government to Brennan. Again, we do not agree. Without question, clearly it is impermissible for a prosecutor to comment, either directly or by implication, on a defendant's failure to take the stand during a trial. Griffin v. California, 380 U.S. 609, 615 (1965). However, _______ __________ when a defendant does take the stand, a prosecutor may attack ____________________ district court at the sidebar conference during which the court addressed whether the Government could inquire into the circumstances surrounding Brennan's departure from Tucker, Anthony, and Day. In so doing, however, Brennan relies upon an affidavit which is not part of the record before us, has not been made part of any appendix (as no appendix was submitted by appellants), and was not included in his inutile addendum. Accordingly, we do not address this argument. See ___ Commonwealth of Massachusetts, Dep't. of Pub. Welfare v. __________________________________________________________ Secretary of Agric., 984 F.2d 514, 522-23 n.7 (1st Cir. 1993) ___________________ (appellant who shirks his/her duty "to provide this court with an appendix sufficient to support his[/her] points on appeal" must bear the onus of any insufficiencies in the appellate record) (quoting United States v. One Motor Yacht _____________ _______________ Named Mercury, 527 F.2d 1112, 1113 (1st Cir. 1975)). ______________ Furthermore, we admonish Brennan's appellate counsel for his lack of professionalism in characterizing the Government's prosecutor's statements as "false," "fictitious," and "unconscionable" without providing us with even a scintilla of evidence to support his allegations. -19- 19 as weak the evidentiary foundation upon which a defendant's testimony rests. See United States v. Garcia, 818 F.2d 136, ___ _____________ ______ 143-44 (1st Cir. 1987); United States v. Savarese, 649 F.2d _____________ ________ 83, 87 (1st Cir. 1981). Moreover, we previously have held that a prosecutor's comments regarding a defendant's failure to produce documents corroborating a defense theory are proper if they are limited to assailing the strength or plausibility of the proffered theory. See United States v. ___ _____________ Glantz, 810 F.2d 316, 321-22 (1st Cir.), cert. denied, 482 ______ _____ ______ U.S. 929 (1987). Having reviewed the questions and comments at issue here,20 we are persuaded that they were made solely for the purpose of calling into question the strength and plausibility of certain of Brennan's testimony. Moreover, we ____________________ 20. On direct, Brennan testified about a number of transactions and facts that normally would have been memorialized in writing during the ordinary course of business dealings. On cross-examination, after ascertaining that Brennan had reviewed the records of these transactions and facts prior to trial, the Government asked Brennan: "And some of those documents, I imagine, would corroborate what you have been saying on the stand for the last two days, is that right?" Later, in its rebuttal argument, the Government made the following comment: Then you have the suggestion that you should take Mr. Brennan at his word that he had $700,000 in the bank. Well, first of all, ladies and gentlemen, I suggest that you have no reason based on his testimony, based on the evidence, to take him at his word. You may ask yourselves the question: Where is the bank statement? Where is the thing produced? Who corroborates his testimony? -20- 20 are convinced that the jury could not have drawn an improper inference from them. Accordingly, we reject Brennan's request for a new trial insofar as it is based upon these questions and comments. 5. Deposition Testimony of Non-Testifying Codefendant 5. Deposition Testimony of Non-Testifying Codefendant ______________________________________________________ Brennan also argues that the district court's admission against him, pursuant to Fed. R. Evid. 801(d)(2),21 of certain deposition testimony given by the non-testifying McHugh during the course of a civil case in 1989 entitles him to a new trial.22 In Brennan's view, the admission of this material infringed on his Sixth Amendment right to conduct adequate cross-examination of an adverse witness and resulted in reversible error. We do not share Brennan's belief that reversible error was committed. As an initial matter, we agree with Brennan that because the disputed deposition testimony was not given "during the course and in furtherance of the conspiracy," it was not admissible under Fed. R. Evid. 801(d)(2)(E). See ___ ____________________ 21. Although it did not so specify, it is apparent that the court admitted the statement as "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." See Fed. R. Evid. 801(d)(2)(E). ___ 22. During McHugh's cross-examination of Brennan, Brennan represented that, at the time he had requested two of the loans applied for at CSB, he told McHugh the reasons he needed the loans. In response, the Government, during its cross-examination of Brennan, successfully sought to introduce the prior testimony of McHugh that he did not know the purposes of the loans at issue at the time Brennan applied for them. -21- 21 United States v. Carper, 942 F.2d 1298, 1301 (8th Cir.) ______________ ______ (statement made to officer after arrest of coconspirator not admissible under Fed. R. Evid. 801(d)(2)(E) because it was not made in furtherance of conspiracy), cert. denied, ___ _____ ______ U.S. ___, 112 S. Ct. 614 (1991). However, even if we construe the admission of the statement as erroneous, our review of the entire record persuades us that the error was harmless beyond a reasonable doubt.23 See Chapman v. ___ _______ California, 386 U.S. 18, 22-24 (1967); Manocchio v. Moran, __________ _________ _____ 919 F.2d 770, 783-84 (1st Cir. 1990) (subjecting material which creates Sixth Amendment Confrontation Clause problems to harmless error analysis), cert. denied, ___ U.S. ___, 111 _____ ______ S. Ct. 1695 (1991); see also Carper, 942 F.2d at 1301-02 ___ ____ ______ (admission of statement to officer under Fed. R. Evid. 801(d)(2)(E) held to be harmless error). Simply put, we do not believe, as Brennan contends, that McHugh's testimony tended to prove that "Brennan was fabricating the purposes of the loans." McHugh's deposition testimony was that McHugh did not know why Brennan was seeking the loans; it was not that Brennan provided him with ___ false purposes for the loans. Thus, the testimony had little, if any, probative value. This fact, when coupled ____________________ 23. On appeal, the Government makes a somewhat strained argument that the material was admissible under Fed. R. Evid. 806. Because we find that the admission of this material, if erroneous, was harmless error, we need not reach the merits of the Government's position. -22- 22 with the abundance of evidence, completely independent of the material here at issue, to support each of Brennan's convictions, convinces us beyond a reasonable doubt that the jury "would have reached the same verdict without having received the tainted evidence." Clark v. Moran, 942 F.2d 24, _____ _____ 27 (1st Cir. 1991) (quoting Milton v. Wainwright, 407 U.S. ______ __________ 371, 377 (1972)); see also United States v. Hudson, 970 F.2d ___ ____ _____________ ______ 948, 953-54 (1st Cir. 1992) (overwhelming independent evidence of guilt renders erroneous failure to admit certain exculpatory evidence harmless error). Accordingly, we decline Brennan's request for a new trial insofar as it is premised on the allegedly erroneous admission of the McHugh deposition testimony. 6. Jury Instructions 6. Jury Instructions _____________________ McHugh contends that, in three respects, the district court committed reversible error in its jury instructions. After carefully reviewing the record in light of McHugh's arguments, we do not agree. a. Ratification of Board as a Defense a. Ratification of Board as a Defense ______________________________________ McHugh argues that the court erred in refusing to instruct the jury that ratification by the Board constitutes a complete defense to willful misapplication. In so doing, McHugh refers us to several cases which, without analysis, simply state that valid consent or ratification by the Board -23- 23 of Directors is a defense to a charge of misapplication. See, e.g., United States v. Gregory, 730 F.2d 692, 701 (11th ___ ____ _____________ _______ Cir. 1984), cert. denied, 469 U.S. 1208 (1985); United States _____ ______ _____________ v. Beran, 546 F.2d 1316, 1321 (8th Cir. 1976), cert. denied, _____ _____ ______ 430 U.S. 916 (1977). In contrast, courts which recently have had occasion to address the issue specifically have concluded that, absent special circumstances, "knowledge, ratification and consent [of the Board] are not per se defenses to the ___ __ charge [of willful misapplication]." United States v. ______________ Cauble, 706 F.2d 1322, 1353 (5th Cir. 1983) cert. denied, 465 ______ _____ ______ U.S. 1005 (1984); see generally Villa, Banking Crimes, ___ _________ ______________ 3.02[5][c]; accord United States v. Bailey, 859 F.2d 1265, ______ _____________ ______ 1279 (7th Cir. 1988), cert. denied, 488 U.S. 1010 (1989); _____ ______ United States v. Castro, 837 F.2d 441, 442 (11th Cir. ______________ ______ 1988).24 Instead, they have determined that knowledge, ratification, and consent "are evidentiary matters that may be considered as part of the defense that there was either not willful misapplication or not intent to injure the bank." Cauble, 706 F.2d at 1353; see also United States v. Castro, ______ ___ ____ _____________ ______ ____________________ 24. Of course, there may be peculiar circumstances where a finding of ratification by the Board would, per se, compel ___ __ the defendant's acquittal. If, for example, the charge of willful misapplication were premised entirely upon a bank officer's non-disclosure of a loan to the Board, clearly a jury could not convict that officer of misapplication if it found that s/he had presented the loan to the Board and the Board had ratified it. -24- 24 887 F.2d 988, 995 (9th Cir. 1989). We are in full agreement with the rule established by these courts. In our view, the correctness of this recent line of authority is best demonstrated by a brief explication of the practical effects of its negation. If we were to adopt the absolute rule proposed by McHugh and hold that ratification by a Board of Directors per se exonerates a bank officer from ___ __ charges of willful misapplication, then we would, for example, put beyond the reach of 656 a bank officer who, in collusion with a rogue Board, provides bank funds to an otherwise unqualified personal friend. We simply cannot discern any rational justification for reaching such a result. In the instant matter, the district court declined to instruct the jury that, as a matter of law, it could not convict McHugh of misapplication if it found that the Board had ratified the loans at issue. Instead, the court allowed McHugh to introduce evidence of ratification and to argue that this evidence suggested that McHugh had no intent to injure or defraud CSB. We believe that, in this case, the court's actions were entirely appropriate. Accordingly, we reject McHugh's claim of reversible error. b. Reference to False Entries in Overt Act Instructions b. Reference to False Entries in Overt Act Instructions ________________________________________________________ McHugh next contends that because the district court entered a judgment of acquittal notwithstanding the -25- 25 verdict for McHugh on the false entry counts, it was reversible error for it to have allowed the jury to consider the incident underlying one of the false entries counts as an overt act in its conspiracy instruction. The error, in McHugh's view, arises from the fact that "the jury may have found [McHugh] guilty of conspiracy solely on the basis of an alleged act which was not criminal." However, it is well established that an overt act need not be a crime. Yates v. _____ United States, 354 U.S. 298, 334 (1957), overruled on other _____________ _________ __ _____ grounds, Burks v. United States, 437 U.S. 1 (1978); see also _______ _____ _____________ ___ ____ United States v. Medina, 761 F.2d 12, 15 (1st Cir. 1985). _____________ ______ Accordingly, McHugh's argument, limited as it is to the statement quoted above, fails as a matter of well- established law. c. Loan Authority Instruction c. Loan Authority Instruction ______________________________ McHugh also takes issue with the district court's having instructed the jury: "In addition, with regard to these charges, you may also consider the evidence concerning Mr. McHugh's loan authority and question whether he acted with intent to injure [the CSB] in his dealings with Mr. Brennan." It is McHugh's opinion that this instruction improperly "focused the attention of the jury on resolution of one evidentiary issue as especially significant in their [sic] deliberations [concerning] whether [McHugh] acted with intent to injure and defraud." Our review of the record, -26- 26 however, persuades us that this instruction, far from being faulty, was an altogether proper exercise by the district judge of his authority to "assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, [and] by drawing their [sic] attention to the parts of it which he thinks important[.]" Querica v. United _______ ______ States, 289 U.S. 466, 469 (1933). Accordingly, we reject ______ McHugh's characterization of this instruction as erroneous. C. Miscellany C. Miscellany ______________ Brennan raises three final arguments. First, he asserts that his representation at trial and at sentencing was constitutionally deficient. Next, he contends that the district court abused its discretion in sentencing him to the high end of the relevant guideline range. Finally, he maintains that the court abused its discretion in adjusting his sentence upward for obstruction of justice. None of Brennan's arguments requires extended discussion. 1. Ineffective Assistance 1. Ineffective Assistance __________________________ Brennan claims that his representation at trial and at sentencing was ineffective and violated his Sixth Amendment rights. In so doing, Brennan points primarily to the failure of trial counsel to introduce certain documents into evidence and the failure of sentencing counsel to spend sufficient time preparing for the sentencing hearing. However, the appellate record does not indicate that either -27- 27 of these claims was properly raised before and/or addressed by the district court. Moreover, our review of the record persuades us that the record is not sufficiently developed for us to address the merits of Brennan's Sixth Amendment claim at this time. Accordingly, we do not reach it. See, ___ e.g., United States v. Gray, 958 F.2d 9, 15 (1st Cir. 1992) ____ _____________ ____ ("Time and again we have held that a claim of inadequate representation will not be resolved on direct appeal when the claim has not been raised in the district court, unless the critical facts are not in dispute and a sufficiently developed record exists."); see also United States v. Hoyos- ___ ____ _____________ ______ Medina, 878 F.2d 21, 22 (1st Cir. 1989) ("Fairness to the ______ parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district court level.").25 2. Sentence at High End of Guidelines Range 2. Sentence at High End of Guidelines Range ____________________________________________ Brennan also contends that the district court abused its discretion in sentencing him to the high end of the relevant guideline range while departing downward in sentencing McHugh. The thrust of Brennan's argument is that the disparity between the sentences of McHugh and himself is ____________________ 25. Brennan may, of course, press his ineffective assistance claim in the district court by way of a collateral proceeding under 28 U.S.C. 2255. -28- 28 unfair. Established caselaw, however, makes clear that we have no jurisdiction to review a sentence that is within the applicable guideline range. E.g., United States v. Aubin, ____ _____________ _____ 961 F.2d 980, 984 (1st Cir.), cert. denied, 113 S. Ct. 248 _____ ______ (1992). Accordingly, we do not reach the merits of Brennan's argument.26 3. Enhancement for Obstruction of Justice 3. Enhancement for Obstruction of Justice __________________________________________ Finally, Brennan asserts that the district court abused its discretion by enhancing his sentence two levels for obstruction of justice for perceived perjurious testimony. See U.S.S.G. 3C1.1 ("If the defendant willfully ___ obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.") (1991 version). A district 2 court's application of this guideline provision is reviewable only for clear error. E.g., United States v. Batista- ____ ______________ ________ Polanco, 927 F.2d 14, 22 (1st Cir. 1991). Our review _______ convinces us that the district court's application of U.S.S.G. 3C1.1, far from being clearly erroneous, is amply ____________________ 26. In his reply brief, Brennan also challenges the district court's calculation of loss. As noted above, see supra note ___ _____ 7, arguments made for the first time in an appellant's reply brief are deemed waived. See Rivera-Muriente, 959 F.2d at ___ _______________ 354. Thus, we do not address Brennan's loss calculation challenge. -29- 29 supported by the record.27 Accordingly, we reject Brennan's claim that the enhancement at issue was an abuse of discretion. III. III. ____ CONCLUSION CONCLUSION __________ Having rejected each of the arguments made on appeal by Brennan and McHugh, we affirm their convictions and sentences. Affirmed. Affirmed. _________ ____________________ 27. The district court explicitly found each of the following to be examples of Brennan's perjurious testimony: (1) Brennan's claim that he did not submit a PFS for purposes of influencing CSB's decision to provide him with the June 5, 1987, $70,000 loan; (2) Brennan's assertion that he expected all of his bounced checks to be honored because he expected there to be sufficient funds in the appropriate accounts at the time the checks were presented for payment; and (3) Brennan's statement that he did not acknowledge having any notes payable to others on his PFS because of sufficient "offsetting assets." There was overwhelming evidence to support each of these findings. -30- 30