United States Court of Appeals
For the First Circuit


No. 97-1360

UNITED STATES,

Appellee,

v.

JESUS PAREDES-RODRIGUEZ,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]



Before

Torruella, Chief Judge,

Coffin and Bownes, Senior Circuit Judges.



Stewart T. Graham, Jr., by appointment of the Court, with whom
Graham & Graham was on brief, for appellant.
Ariane D. Vuono, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for
appellee.



November 6, 1998
TORRUELLA, Chief Judge. Jess Paredes-Rodrguez was
convicted on charges that he conspired to possess cocaine with
intent to distribute, and that he carried a firearm in connection
with drug trafficking. He was sentenced to 121 months in prison
and five years of supervised release. He now appeals his
conviction, claiming that the jury instructions were misleading,
that the indictment was constructively amended by evidence that
also constituted a prejudicial variance from the conduct charged in
the indictment, and that two police officers were erroneously
permitted to testify. We affirm his conviction.
I. Background
On an appeal from a criminal conviction, we view the
facts in the light most favorable to the verdict. See United
States v. Shea, 150 F.3d 44, 46 (1st Cir. 1998). On the evening of
November 15, 1994, defendant-appellant Jess Paredes-Rodrguez was
driving a car down Merwin Street in Springfield, Massachusetts. He
was accompanied by Carlos Antigua-Herrera, who was sitting on the
front passenger seat. The car was stopped by state law enforcement
officers assigned to the U.S. Drug Enforcement Agency's Western
Massachusetts Task Force, and both driver and passenger were
arrested. During the arrest, Paredes attempted to draw a loaded
.38 caliber semi-automatic pistol from his pockets, but was
forcibly restrained from doing so. The officers searched the car,
and found 119 grams of crack cocaine under the passenger's seat.
The arrest was not random. An undercover state police
officer, Trooper Juan Coln, had negotiated for delivery of cocaine
on three previous occasions with the main target of the
investigation, a certain Jos Reyes, also known as Rafi. On
October 12, October 18, and November 2, 1994, Rafi delivered crack
cocaine to Coln at the same location on Merwin Street where
Paredes was later arrested. During the first transaction, on
October 12, Rafi brought the crack by himself and then sold it to
Coln. On October 18, Rafi arrived alone without the crack, but a
few moments later, an individual known as Flaco arrived carrying
the cocaine that Rafi then sold to Coln. On November 2, Rafi
again arrived alone and without the cocaine, entered Coln's car,
and sat down on the front passenger seat. Soon afterwards, the
appellant in this case, Paredes, walked by and handed Rafi through
the car's open window a one-ounce package of crack cocaine that
Rafi then sold to Coln for $750.
Paredes' arrest followed the fourth transaction between
Rafi and Coln. On November 14, Rafi agreed to sell Coln four
ounces of crack cocaine for $3,000. The following day, Rafi told
Coln that at approximately 7:15 p.m., two people in a black
Oldsmobile would arrive at the same location on Merwin street to
deliver the crack. It was precisely 7:15 p.m. when Paredes and
Antigua arrived at the designated location in their car, carrying
119 grams (approximately 4.2 ounces) of crack cocaine.
After his arrest, Paredes waived his Miranda rights, seeMiranda v. Arizona, 384 U.S. 436 (1966), admitted that he was
delivering cocaine, and then led the arresting officers to the
building where Rafi had given him the crack cocaine. However,
Paredes subsequently retracted his confession and denied having
taken part in or even having had knowledge of the drug transaction. 
He explained that he showed the police where Rafi lived merely
because he was trying to be helpful. He also simultaneously
asserted, inconsistently, that he had no knowledge of the cocaine
that was found in his car, and that the cocaine belonged to Rafi. 
Paredes further stated that Rafi had given him the gun, and told
him to deliver the gun and the car to a friend who would be waiting
for him on Merwin Street. He admitted, however, that he had
originally told the police that he found the gun under some leaves.
Paredes' trial before the U.S. District Court for the
District of Massachusetts began on November 4, 1996, and continued
until November 12. On that date, the jury returned a verdict
finding Paredes guilty on all three counts of the indictment. On
February 24, 1997, Paredes was sentenced as described above. 
Judgment was entered on February 25, and Paredes filed a notice of
appeal on April 19, 1997.
II. Analysis
A. Jury Instructions
If objections to the jury instructions have been properly
preserved, we review the trial judge's choice of wording in the
instructions only for abuse of discretion. See United States v.
Smith, 145 F.3d 458, 460 (1st Cir. 1998). In order to determine
whether or not the court abused its discretion, we first "'must
look at the instructions in light of the evidence and determine
whether they fairly and adequately submit the issues in the case to
the jury.'" Id. (quoting United States v. Mitchell, 85 F.3d 800,
809 (1st Cir. 1996)). Even if we find the instructions erroneous,
any such errors that are not of constitutional magnitude are
reviewed for harmlessness. See Fed. R. Crim. P. 52(a); Koonce v.
Pepe, 99 F.3d 469, 473 (1st Cir. 1996). Pursuant to harmless
error review, "[t]he only question for us is whether the ailing
instruction by itself so infected the entire trial that the
resulting conviction violates due process." Id. (quoting Estellev. McGuire, 502 U.S. 62, 72 (1991)). Accordingly, "[w]e must
address the instruction 'in the context of the instructions as a
whole and the trial record,' and 'inquire whether there is a
reasonable likelihood that the jury has applied the challenged
instruction in a way that violates the [constitutional right to due
process.]'" Koonce, 99 F.3d at 473 (quoting Estelle, 502 U.S. at
72) (other citations omitted).
As noted earlier, Paredes was indicted on three counts:
conspiracy to possess cocaine with intent to distribute, possession
of cocaine with intent to distribute, and carrying a firearm in
connection with a drug-trafficking crime. Although he acknowledges
that there was other evidence that could support his conviction on
the conspiracy count, Paredes contends that the possession count
was the cornerstone of the indictment because evidence that he was
in possession of the cocaine was the strongest evidence for a
conviction on the conspiracy and weapons counts. 
Paredes claims that, since the cocaine was found in a
plastic bag beneath a towel underneath the front passenger seat,
some distance from the reach of his outstretched hand, he could not
be said to be in actual possession of the cocaine. In order to
convict him on the possession count, he claims, the jury had to
find that he was in constructive possession of the cocaine. 
However, Paredes objects to the court's wording of the instruction
on constructive possession, specifically challenging the omission 
of any explicit mention of an intent requirement. He cites the
relevant portion of the court's instructions: "If an individual
has the ability to exercise substantial control over an object that
he does not have in his physical custody, then he is in possession
of that item." He further contends that the subsequent instruction
that possession must be knowing in order to be criminal does not
cure the effect of the omission of an intent requirement, because
it allegedly permits conviction of a person who knows that an item
in proximity to him contains cocaine, even though that person does
not intend to exercise control over the item. 
Assuming for the sake of argument that Paredes is correct
that the evidence did not permit a finding that he was in actualpossession of the cocaine, the first question before us is whether
the district court's instructions to the jury, taken as a whole,
correctly conveyed the law as to constructive possession. Paredes
is correct in asserting that intent is an element of constructive
possession, which "exists when a person 'knowingly has the power
and intention at a given time to exercise dominion and control over
an object, either directly or through others.'" United States v.
Torres-Maldonado, 14 F.3d 95, 102 (1st Cir. 1994) (quoting United
States v. Garca, 983 F.2d 1160, 1164 (1st Cir. 1993)). Upon
examining the instructions as a whole, however, we find that,
notwithstanding the absence of a explicit mention of an intent
requirement, the same is implicit in the instructions. 
Although the omission of an explicit reference to intent
is a less than ideal way of explaining constructive possession to
a jury, the other instructions given by the court helped
substantially to prevent the prejudice adverted to by Paredes. For
example, the court also instructed:
The possession of a controlled substance
cannot be found solely on the basis that
the defendant was near or close to the
controlled substance. Nor can it be found
simply because the defendant was present
at a scene where controlled substances
were involved, or solely because the
defendant associated with a person who
controlled the substance where it was
found.

This instruction, in combination with certain illustrative examples
of constructive possession given by the court and subsequent
instructions on the intent-to-distribute aspect of the crime
charged, effectively conveyed the notion that the jury had to find
that Paredes' possession of the cocaine was knowing and
intentional. As a prior panel of this court stated, 
[the appellant's argument] ignores the
nature of the crime with which he was
charged. In directing his entire argument
at alleged error in the definition of
'possession,' the defendant forgets that
he was charged not with simple possession,
but possession with intent to distribute.
. . . [His] argument is that the jury
found he possessed [certain containers]
without knowing they contained cocaine,
but went on to find that he intended to
distribute the cocaine that was in them. 
No reasonable jury could make such a
finding.

United States v. Hallock, 941 F.2d 36, 43 (1st Cir. 1991). 
Similarly, in the case before us, it simply makes no sense to
assert that the same jury that found that Paredes intended to
distribute the cocaine could have simultaneously found that he did
not intend to possess it.
B. The Indictment
Paredes raises two separate but related claims regarding
the indictment. One is his claim that the charges were
constructively and improperly amended by the admission of evidence
that he delivered cocaine to Rafi on November 2, because that
evidence allowed the jury to convict him of a conspiracy that was
not charged in the indictment. The other is his argument that
there was a fatal variance between the indictment and the proof
offered by the government at trial. Reviewing both contentions for
plain error, we find them without merit.
When an amendment of the indictment occurs in the middle
of trial, it is considered per se prejudicial for a number of
reasons: "to preserve the right of the person accused of an
infamous crime to have a grand jury vote on the indictment, to
prevent reprosecution for the same offense, and to protect the
right of the accused to be informed of all charges," so as to be
able to adequately prepare his defense. United States v. Vavlitis,
9 F.3d 206, 210 (1st Cir. 1993). A constructive amendment of the
indictment "occurs when the charging terms of the indictment are
altered, . . . in effect, by prosecution or court after the grand
jury has last passed upon them." United States v. Dunn, 758 F.2d
30, 35 (1st Cir. 1985) (quoting Gaither v. United States, 413 F.2d
1061, 1071-72 (D.C. Cir. 1969)); see also Vavlitis, 9 F.3d at 210. 
For example, an indictment is constructively amended by "a jury
instruction which modifies the offense charged in the indictment,
. . . or the admission of evidence of an offense not charged by the
grand jury." Dunn, 758 F.2d at 35. 
Notwithstanding Paredes' contentions, the admission of
evidence of the November 2 delivery did not constructively amend
the indictment. The conspiracy count charged Paredes with
participating in a conspiracy to possess cocaine with intent to
distribute "on or around November 15, 1995." During trial, the
government introduced evidence that Coln purchased cocaine from
Rafi on three occasions prior to the November 15 transaction, and
that Paredes acted as Rafi's courier on one of those occasions.
The problem with Paredes' argument is that it is based on
a misconception of the scope of the conspiracy charged in the
indictment. He does not question that the indictment charged him
with conspiring with Rafi and others to possess and sell cocaine. 
He does argue, however, that because the indictment refers to a
conspiracy "on or about November 15," the conspiracy charge is
necessarily limited to the events that occurred on November 15, and
therefore, that the evidence as to the other transactions is
evidence of other, uncharged conspiracies. Unfortunately for his
argument, this circuit has previously held that "the setting forth,
in approximate form, of [a] date on in the indictment does not
preclude the admission of evidence relating to events which
occurred earlier." United States v. Fisher, 3 F.3d 456, 461 n.12
(1st Cir. 1993); see also United States v. Bello-Prez, 977 F.2d
664, 669 n.4 (1st Cir. 1992). The evidence as to the earlier
transactions is certainly relevant to the November 15 transaction,
because it provides an explanation of his presence on Merwin Street
on the day of his arrest. Furthermore, any potential prejudice was
prevented by the district court's careful instruction to the jury -
which we have no reason to fear was ignored by the jury - that the
defendant was on trial only for the events of November 15, and none
other.
The argument with regard to the alleged variance in proof
is quite similar to the constructive amendment argument. "A
variance occurs when the proof differs from the allegations in the
indictment." Vavlitis, 9 F.3d at 210. However, "[a] variance is
material and reversible only if it has affected the defendant's
substantial rights . . . to be informed of the charges and to
prevent a second prosecution for the same offense." Id. Paredes
claims that the evidence introduced at trial regarding the
November 2 transaction created a prejudicial variance between the
proof and the indictment. As noted above, however, the reference
to approximate dates in an indictment is not binding and thus the
scope of the indictment may cover prior events. See Fisher, 3 F.3d
at 461 n.12. Accordingly, the evidence as to the prior
transactions between Rafi and Coln, and Paredes' participation in
one of those transactions is not materially different from the
conduct charged in the indictment.
Moreover, even assuming that the evidence of prior
transactions was sufficiently different from the acts charged in
the indictment to constitute a variance, the evidence did not
prejudice Paredes' substantial rights. He was certainly able to
prepare an adequate defense, since he was on notice that the
government would seek to introduce such evidence. Additionally,
any danger that Paredes could be convicted on the basis of the
evidence of the November 2 transaction was sufficiently mitigated
by the court's instruction to the jury that the evidence as to the
earlier transactions should be considered only as evidence that
might be probative of his participation in a conspiracy on
November 15, and not as proof of his participation in an earlier
conspiracy.
C. Evidentiary Rulings
Paredes objects to the trial court's admission of Coln's
testimony as to statements made by Rafi in his presence during
their negotiations for the November 15 transaction. He also
objects to the admission of the testimony of the law enforcement
officer in charge of the investigation as to what was said to him
by two other officers. Neither objection is well-founded.
Under Fed. R. Evid. 801(d)(2)(E), a defendant's
coconspirator's statements are admissible if the prosecution proves
to the trial judge by a preponderance of the evidence that there
was a conspiracy, that the defendant was part of the conspiracy,
and that the statements were made by the coconspirator during the
course and in furtherance of the conspiracy. See Bourjaily v.
United States, 483 U.S. 171, 176 (1987); see also United States v.
Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977) (explaining that
under Fed. R. Evid. 104(a), trial judge rather than jury has duty
to hear evidence and determine admissibility of coconspirator
statements). Moreover, after some debate among the circuit courts
of appeals, see, e.g., Petrozziello, 548 F.2d at 23 n.2, the
Supreme Court declared that trial courts may consider any non-
privileged evidence, regardless of its admissibility, in making
Rule 801(d)(2)(E) determinations, see Bourjaily, 483 U.S. at 178-79
(harmonizing Fed. R. Evid. 104(a) procedures and Rule 801(d)(2)(E)
determinations).
Thus, for example, in determining whether or not to
permit the introduction of evidence as to the statements of an
alleged coconspirator, the trial judge may consider hearsay
evidence, including the very coconspirator statement whose
introduction is being sought. As the Court explained, "there is
little doubt that a coconspirator's statements could themselves be
probative of the existence of a conspiracy and the participation of
both the defendant and the declarant in the conspiracy." Id. at
180.
In the case before us, the district court conducted a
Petrozziello hearing during which he reviewed the available
evidence, including but not limited to Coln's testimony as to what
Rafi had stated. The court concluded that the government had
established by a preponderance of the evidence that there had been
a conspiracy, that Paredes and Rafi had been part of the
conspiracy, and that Rafi's statements were made during and in
furtherance of the conspiracy. In making its determination, the
court emphasized Coln's testimony that Paredes handed Rafi the
crack cocaine during the November 2 transaction, and the fact that
Paredes was arrested while in possession of four ounces of crack
cocaine at the time and place Rafi had said his courier would
deliver four ounces of crack cocaine. Viewing this evidence in the
light most favorable to the guilty verdict, we discern no error in
the district court's determination.
Paredes' response is to raise, once more, the argument
that the conspiracy charged did not include the prior transactions,
but only the November 15 transaction, and thus, that Rafi's
statements were made in the course of a prior conspiracy, and not
the one at issue. This is an argument we have considered and
rejected above, and thus we merely repeat that the scope of the
conspiracy charged in the indictment is broad enough to cover the
earlier transactions between Rafi and Coln.
Paredes also argues that the court erred in deciding to
permit Sgt. Neil Maloney, the agent in charge of the investigation,
to testify as to what other officers told him during the course of
the investigation. Maloney testified that officers under his
command told him that they saw someone leave Paredes' residence on
Tilton Street in a brown Toyota, proceed to Belmont Street, where
both driver and passenger exchanged the Toyota for a dark Buick,
and then proceed Merwin Street driving the same Buick. Paredes
objected to this testimony on hearsay grounds, but the judge
overruled the objection, stating that he would allow the testimony
for the limited purpose of explaining how the surveillance reports
prompted Maloney to take subsequent action, rather than to
establish the truth of the reports. Given that the Federal Rules
of Evidence define hearsay as "a statement, other than one made by
the declarant while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted," Fed. R. Evid.
801(c), the court's ruling was not an abuse of discretion. Most
importantly, any error would have been harmless, because Maloney's
testimony as to the car switch was of only tangential importance to
the ultimate issue of whether Paredes committed the acts he was
charged with.
Finally, Paredes objects to the district court's decision
to permit Maloney to testify as to Coln's out-of-court
identification of Paredes, as well as the comments that Coln made
at the time. Based on a photo taken of Paredes after his arrest on
November 15, Coln identified him as the courier who delivered the
crack during the November 2 transaction. Coln had testified
earlier during the trial as to the same incident, and, according to
Paredes, Coln's identification at trial was very shaky. Paredes
thus claims that he was prejudiced by the admission of Maloney's
testimony because its effect was to bolster Coln's identification. 
Rule 801(d)(1)(C), however, declares that "[a] statement is not
hearsay if . . . [t]he declarant testifies at the trial or hearing
and is subject to cross-examination concerning the statement, and
the statement is . . . one of identification of a person made after
perceiving the person." Cf. United States v. Owens, 484 U.S. 554,
564 (1988) (Rule 801(d)(1)(C) exception applicable to evidence of
witness's prior identification of defendant, even though by the
time of trial, witness was unable to remember identification). 
Indeed, "[t]he premise for Rule 801(d)(1)(C) was that, given
adequate safeguards against suggestiveness, out-of-court
identifications were generally preferable to courtroom
identifications," because of the problem of fading memories. Id.at 563. Thus, even assuming that Coln's identification of Paredes
at trial was less emphatic than his earlier identification in the
presence of Maloney, this would merely confirm the validity of the
premise underlying Rule 801(d)(1)(C).
III. Conclusion
For the reasons discussed above, we affirm the
appellant's conviction.