USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2030

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 LAURIER J. DOYON,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]

 

 Before

 Torruella, Chief Judge,
 
 Hill, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 
 Peter E. Rodway, by appointment of the court, for appellant.
 F. Mark Terison, Assistant United States Attorney, with whom
Jay P. McCloskey, United States Attorney, was on brief for the
United States.

October 19, 1999

 
 
 BOUDIN, Circuit Judge. Laurier Doyon was tried by a jury
of attempting to possess cocaine with intent to distribute, 21
U.S.C. 841, 846, and convicted of the offense. Because he had
two prior drug felonies, he was sentenced as a career offender to
262 months in prison and now appeals. One of his claims is that
the evidence was insufficient to support the conviction, so we set
forth the facts in the light most favorable to the government. 
United States v. Munoz, 36 F.3d 1229, 1234 (1st Cir. 1994), cert.
denied, 513 U.S. 1179 (1995). The evidence at trial permitted the
jury to find that the following had occurred.
 In late August or early September 1997, one Eduardo
Escobar-Reyes shared an apartment in Portland, Maine, with a drug
dealer named Johnny and became involved in Johnny's drug
operations. They sold powder cocaine which they obtained from a
source in New York. In late October 1997, Doyon helped Escobar and
Johnny move to a hotel. Shortly thereafter, at another location,
Escobar sold three ounces of cocaine to Doyon for approximately 
$3,300; the drug was "fronted" to Doyon, meaning that he paid an
extra amount per ounce but did not have to pay Escobar up front, a
practice that is common in deals between drug traffickers.
 Thereafter, Escobar left for New York, where he and
Johnny purchased five ounces of cocaine; Escobar returned to
Portland on November 4, 1997. At some point thereafter, Doyon
called Escobar at the hotel and said that he had the money he owed
Escobar from the prior deal and wanted to meet him. (Doyon knew
about the New York buying trip because he had driven Johnny part of
the way there.) Doyon also indicated an interest in a possible
further purchase, but Escobar--who was planning to sell his new
inventory to another of his customers (one Harry Brady)--told Doyon
that he did not have any drugs to supply. Escobar and Doyon agreed
to meet later. This call was not recorded, but Escobar testified
to it at trial.
 On November 6, 1997, Escobar met with Brady to transfer
the cocaine, but Brady was in fact an undercover government agent
and Escobar was arrested. Escobar then agreed to cooperate and,
while giving a statement, received a pager signal from Doyon and
returned Doyon's call in the presence of government agents. That
call, and a second occurring soon thereafter, were recorded by the
agents using a tape recording device. The tapes and transcripts
were offered at trial together with agent testimony that the tapes
accurately reflected what they had heard Escobar say.
 In the first conversation Escobar indicated that Doyon
could not buy any more drugs until he paid off his earlier debt, to
which Doyon replied: "I have the money Eduardo." Later in the
conversation, Escobar stated: "How, how much you, you want?" Doyon
replied: "What do you mean? I want four ounces, at least dude. I
want ten." Doyon asked to have Johnny call him and concluded that
he and Escobar would meet that night.
 At 12:30 p.m., about half an hour after the first call, 
Escobar (acting under the government's supervision) paged Doyon and
a second telephone conversation ensued. In the second
conversation, Doyon and Escobar agreed to meet at the hotel at
around 5 p.m. Escobar asked Doyon whether he had "all the money";
and Doyon replied: "Of course." Doyon agreed that they would meet
at 5 p.m. and persisted in asking Escobar to have Johnny page
Doyon. 
 Under police surveillance, Doyon arrived at the hotel
shortly before 6 p.m., entered Escobar's room briefly and then
(after not finding Escobar) returned to his truck and started to
drive away. When police cars turned on their lights and sirens,
Doyon raced away, hitting one vehicle and just missing another, and
was caught when he stopped about a quarter mile away. Agents
retrieved large amounts of cash from Doyon's pocket and wallet, but
evidence of the exact amount was not provided at trial.
 Prior to trial, Doyon had sought unsuccessfully to
suppress the tape recordings. Following the government's
presentation of its case, Doyon asked for a directed judgment of
acquittal for lack of sufficient evidence. The district court,
although regarding the issue as a close one, denied the motion and
the case was submitted to the jury. After several hours of
deliberation, the jury convicted Doyon of attempting to possess
cocaine with intent to distribute.
 At sentencing, the district court attributed to Doyon the 
four ounces of cocaine that the court thought Doyon had attempted
to buy and, as related conduct, the three ounces he had purchased
in late October. This would ordinarily have produced an offense
level of 18, which the district court adjusted upward for Doyon's
possession of a weapon and for endangerment of others caused by
Doyon's flight. In addition, based on two prior drug felony
convictions in state court, the district court determined that
Doyon was a career offender, U.S.S.G. 4B1.1, and, after declining
to depart, imposed the minimum sentence of 262 months.
 The law of attempt is reasonably clear in the center but
quite fuzzy around the edges; different formulations have been used
to cope with a range of problems, such as degree of involvement,
impossibility and withdrawal. See Model Penal Code 5.01 cmt.
(1985). In this circuit, as in a number of others, the court has
taken the Model Penal Code as its guide. See United States v.
Dworken, 855 F.2d 12, 16-17 (1st Cir. 1988). Under the Code
definition, set forth in section 5.01 (reprinted as an appendix to
this opinion), we have viewed the two key elements of the offense
of attempt as (1) an "intent" to commit the substantive offense and
(2) a "substantial step towards [its] commission." See United
States v. Rivera-Sola, 713 F.2d 866, 869 (1st Cir. 1983).
 In this case, Doyon's "intent" to acquire cocaine is
difficult to dispute (and Doyon does not now challenge the
inference that he intended to distribute what he got). Doyon had
said at the outset that he wanted to acquire four to ten ounces; he
had acquired three ounces from the same source on a prior occasion;
and his alacrity in pressing to pay off a prior drug debt supported
the inference that he had further interest in acquiring more
inventory and reasonably soon.
 On appeal, Doyon's attack on the evidence rests on the
premise that Doyon could not have intended to accept the new
delivery at the same time that he paid off his old debt (because
Escobar had said earlier that he did not have any drugs) and that
the payment of an old debt as a first step in securing a later
delivery is not the "substantial step" toward possession required
to make out an attempt. The case law, says Doyon, usually involves
conduct by defendant that brings him somewhat closer to final
commission of the object crime. E.g., United States v. Fisher, 3
F.3d 456, 462 n.18 (1st Cir. 1993) (planning deal, accepting
sample, arriving at scene of planned deal).
 It is a close question whether the evidence taken as a
whole would permit the jury to conclude that Doyon expected to buy
cocaine at the same time that he paid off his old debt. Based on
evidence not presented to the jury, it appears that Doyon may well
have expected to make an immediate purchase; but, of course, our
concern is solely with what the jury could reasonably have found on
the evidence before it. Escobar's statement that he had no drugs
occurred before Doyon came to the hotel, yet it might well be a
stretch to suppose that the jury could find beyond a reasonable
doubt that Doyon expected to make a purchase on November 6.
 The point need not be pursued. In considering the motion
to acquit, the district judge rejected the notion that the jury
could find that Doyon had an intent to make a simultaneous
purchase, and in closing arguments both lawyers invited the jury to
focus on a different question, namely, whether in context Doyon's
effort to pay off his drug debt could be regarded as a substantial
step toward a purchase in the near future and might therefore
constitute a substantial step toward possession with intent to
distribute. We consider the issue in the same light and, while
agreeing that this could be regarded as a close case, uphold the
refusal to direct a verdict.
 The evidence already mentioned was ample for the jury to
find beyond a reasonable doubt that Doyon intended to make a
purchase of cocaine from Escobar or Johnny in the near future and
that Doyon's effort to pay his prior drug debt was intended by him
to remove an express obstacle to this purchase. The more difficult
question is whether Doyon's effort to make the payoff constituted
a substantial step "toward" the commission of the possession,
United States v. Figueroa, 976 F.2d 1446, 1459 (1st Cir. 1992),
cert. denied, 507 U.S. 943 (1993), or (as the Code frames the
issue) a substantial step "in a course of conduct planned to
culminate in [the defendant's] commission of the crime" in
question. Model Penal Code 5.01(1)(c).
 Both the Code, and instructions we have approved, say
that the substantial step must be one "strongly corroborative of
the actor's criminal purpose." Model Penal Code 5.01. But "[i]f
there is separate evidence of criminal intent independent from that
provided by the substantial steps (e.g., a confessed admission of
a design to commit a crime), then the substantial steps need not
themselves be unequivocally indicative of criminal intent--they
must merely corroborate that intent." Dworken, 855 F.2d at 17 n.3. 
Doyon's original, express statement of his aim to acquire four to
ten ounces after paying off his debt provides this independent
evidence of his intent, and his arrival at the hotel with ample
cash corroborates that intent.
 The difficult question is whether the conduct, here
Doyon's travel to the hotel with cash to pay off the prior debt, is
substantial in relation to reaching the criminal goal. Decisions
often distinguish between a "substantial step" and "mere
preparation," but whether this comparison helps or hinders the
jury, it simply shifts the locus of ambiguity from one term to
another. However, both our case law and the Code's specific
examples of conduct that may be found sufficient as a substantial
step show that the defendant does not have to get very far along
the line toward ultimate commission of the object crime in order to
commit the attempt offense.
 Contrary to at least some common law cases, the Code
names, as examples of acts that may be a substantial step, "lying
in wait, searching for or following the contemplated victim of the
crime," "reconnoitering" the place where the crime is to be
committed, and "possession of materials to be employed" in the
crime if specially designed for unlawful use. Model Penal Code 
5.01(2). The cases often involve somewhat more robust facts, but
the defendant's arrival at the scene ready to commit the crime has
been found adequate to constitute a substantial step in a number of
cases. See United States v. Argencourt, 996 F.2d 1300, 1304 (1st
Cir. 1993), cert. denied, 510 U.S. 1061 (1994); Chapdelaine, 989
F.2d at 33.
 The main purpose of the substantial step requirement is
to distinguish between those who express criminal aims without
doing much to act on them and others who have proved themselves
dangerous by taking a "substantial step" down a path of conduct
reasonably calculated to end in the substantive offense. Model
Penal Code 5.01 cmt. 6, at 329-31. It is this purpose that
informs the judgment whether a specific act or acts, in context and
coupled with proof of intent, can be regarded as substantial, and
it helps explain the Code's otherwise confusing conflation of
intent and conduct in defining what is a substantial step.
 Given this guiding purpose, one can imagine a step toward
the offense--literally substantial in time and effort--that might
still not qualify as an attempt, at least if the intent was very
general. But here, Doyon did not merely seek to pay off a drug
debt while generally contemplating some future purchase. Doyon had
a prior relationship with his "wholesalers," he had made a prior
purchase on credit, he was paying off the first debt as a condition
of making a second purchase from the same wholesalers, and his plan
to acquire more drugs was specific down to the quantity of drugs
being sought. Thus, the "fit" was tight enough for the jury to
conclude that Doyon's effort to pay off his prior debt was
effectively a substantial step toward possessing more drugs.
 There is one further concern. Too ready classification
of an otherwise lawful act as a substantial step may capture
someone who might well have thought better, and abandoned the
effort, before the attempt flowered into the substantive crime. 
The Code attempts to deal with this problem by giving the defendant
an affirmative defense where he abandons the attempt by manifesting
"a complete and voluntary renunciation of his criminal purpose." 
Id. 5.01(4); see also Dworken, 855 F.2d at 20. This is of no use
to Doyon whose attempt was frustrated and not voluntarily
abandoned.
 Doyon's other ground of appeal is his claim that the
district court erred in admitting the tape recordings. He argues
that there was an inadequate "foundation" for admitting the tapes
because the government did not establish that the recording device
was in proper working order. Indeed, the government admitted in
court that the tape recorder was an old one that had to be operated
manually and, at least in this instance, omitted the first few
seconds of both of the taped conversations that were introduced in
evidence. Doyon argues that this undermined the necessary
foundation and also rendered the evidence misleading and subject to
exclusion under Fed. R. Evid. 403.
 The "foundation" required in order to authenticate real
evidence--here the tape recordings--is simply an evidentiary
showing of whatever facts are necessary in the circumstances to
prove that the item is what the proponent claims it to be. Fed. R.
Evid. 901. In the case of recorded conversations, some courts have
a recipe for this showing, e.g., United States v. McMillan, 508
F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975),
but this circuit has simply required proof that the tape recording
accurately reflects the conversation in question. 
 It is true, as Doyon argues, that evidence derived from
the operation of a machine or instrument normally depends for its
validity on the premise that the device was in proper working
order, but the nature and stringency of this requirement varies
with the circumstances. A scale that produces wildly disparate
readings is unlikely to furnish usable evidence of drug weight; but
a tape recorder that cuts off introductory remarks may (and so far
as we know here did) produce a perfectly accurate recording of the
remainder of the conversation. An accurate tape recording of part
of a conversation is not inherently less admissible than the
testimony of a witness who heard only part of a conversation and
recounts the part that he heard.
 This brings us to the real issue, which is whether the
tapes' probative value was substantially outweighed by their
tendency to mislead on account of the missing portions. Fed. R.
Evid. 403. Such judgments, as to which the trial judge has
considerable latitude, United States v. Font-Ramirez, 944 F.2d 42,
47 (1st Cir. 1991), require a certain amount of imagination
wherever the exact content of the omitted portion is unknown. But
the recorded portion of the conversation may contain
straightforward admissions and there may be no reason to suspect
that they were qualified by anything said in the omitted portions.
 This appears to be just such a case: the key admissions
on the tapes were Doyon's expressed desire to purchase four to ten
ounces of cocaine, his intent to pay off his old debt as a
predicate, and his plan to meet promptly with Escobar at the hotel. 
These intentions were either confirmed by or at least consistent
with other evidence (the trip to the hotel, the possession of
money, the attempted flight), and Doyon himself is unable to
suggest what else would likely be on the missing portions of the
two tapes that might have tempered or contradicted the admissions.
 Thus, no basis exists to suppose that the tapes were
misleading at all, let alone that the district judge abused his
discretion in rejecting the objection. Nor was there any
suggestion that the government chose to cut off portions of the
conversation or that it was doing anything other than its best to
obtain a complete recording. See generally 1 Weinstein's Federal
Evidence 106.07[2], at 106-26 (McLaughlin ed., 2d ed. 1999). 
Thus, the conviction was proper and, while the sentence was
certainly severe, federal sentencing is largely outside the control
of federal judges.
 Affirmed. APPENDIX

Model Penal Code 5.01 (1985). Criminal Attempt.
 (1) Definition of Attempt. A person is guilty of an attempt to
commit a crime if, acting with the kind of culpability otherwise
required for commission of the crime, he:

 (a) purposely engages in conduct that would
 constitute the crime if the attendant
 circumstances were as he believes them to be;
 or

 (b) when causing a particular result is an
 element of the crime, does or omits to do
 anything with the purpose of causing or with
 the belief that it will cause such result
 without further conduct on his part; or

 (c) purposely does or omits to do anything
 that, under the circumstances as he believes
 them to be, is an act or omission constituting
 a substantial step in a course of conduct
 planned to culminate in his commission of the
 crime.

 (2) Conduct That May Be Held Substantial Step Under Subsection
(1)(c). Conduct shall not be held to constitute a substantial step
under Subsection (1)(c) of this Section unless it is strongly
corroborative of the actor's criminal purpose. Without negativing
the sufficiency of other conduct, the following, if strongly
corroborative of the actor's criminal purpose, shall not be held
insufficient as a matter of law:

 (a) lying in wait, searching for or following
 the contemplated victim of the crime;

 (b) enticing or seeking to entice the
 contemplated victim of the crime to go to the 
 place contemplated for its commission;

 (c) reconnoitering the place contemplated for
 the commission of the crime;

 (d) unlawful entry of a structure, vehicle or
 enclosure in which it is contemplated that the
 crime will be committed;

 (e) possession of materials to be employed in
 the commission of the crime, that are
 specially designed for such unlawful use or
 that can serve no lawful purpose of the actor
 under the circumstances;

 (f) possession, collection or fabrication of
 materials to be employed in the commission of
 the crime, at or near the place contemplated
 for its commission, if such possession,
 collection or fabrication serves no lawful
 purpose of the actor under the circumstances;

 (g) soliciting an innocent agent to engage in
 conduct constituting an element of the crime.

 (3) Conduct Designed to Aid Another in Commission of a Crime. 
A person who engages in conduct designed to aid another to commit
a crime that would establish his complicity under Section 2.06 if
the crime were committed by such other person, is guilty of an
attempt to commit the crime, although the crime is not committed or
attempted by such other person.

 (4) Renunciation of Criminal Purpose. When the actor's conduct
would otherwise constitute an attempt under Subsection (1)(b) or
(1)(c) of this Section, it is an affirmative defense that he
abandoned his effort to commit the crime or otherwise prevented its
commission, under circumstances manifesting a complete and
voluntary renunciation of his criminal purpose. The establishment
of such defense does not, however, affect the liability of an
accomplice who did not join in such abandonment or prevention.

 Within the meaning of this Article, renunciation of criminal
purpose is not voluntary if it is motivated, in whole or in part,
by circumstances, not present or apparent at the inception of the
actor's course of conduct, that increase the probability of
detection or apprehension or that make more difficult the
accomplishment of the criminal purpose. Renunciation is not
complete if it is motivated by a decision to postpone the criminal
conduct until a more advantageous time or to transfer the criminal
effort to another but similar objective or victim.