# United States Court of Appeals
## For the First Circuit

No. 19-2253

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ R. ANDINO-MORALES,

Defendant, Appellant.

No. 19-2262

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ D. FOLCH-COLÓN,

Defendant, Appellant.

No. 20-1274

UNITED STATES OF AMERICA,

Appellee,

v.

ANIBAL MIRANDA-MONTAÑEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Barron, <u>Chief Judge</u>,
Thompson, <u>Circuit Judge</u>,
and Burroughs, <u>District Judge</u>.[*]

<u>David Ramos-Pagan</u>, for appellant José R. Andino-Morales.
<u>Laura Maldonado-Rodríguez</u>, for appellant José D. Folch-Colón.
<u>Victor A. Ramos-Rodríguez</u>, for appellant Anibal Miranda-Montañez.
<u>Francisco A. Besosa-Martínez</u>, Assistant United States Attorney, with whom <u>W. Stephen Muldrow</u>, United States Attorney, and <u>Mariana E. Bauzá-Almonte</u>, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

July 11, 2023

---

[*] Of the District of Massachusetts, sitting by designation.

BARRON, **Chief Judge**.  These consolidated appeals arise out of the federal investigation into the criminal activities of La Asociación ÑETA ("ÑETA"), an organization whose members allegedly trafficked contraband and carried out murders-for-hire throughout several prisons in Puerto Rico.  The three appellants in this case -- José R. Andino-Morales ("Andino"), José J. Folch-Colón ("Folch"), and Anibal Miranda-Montañez ("Miranda") -- were convicted in the United States District Court for the District of Puerto Rico of conspiring to participate in ÑETA through a pattern of racketeering activity ("RICO") in violation of 18 U.S.C. § 1962(d).  Folch and Miranda were also convicted of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, and of committing a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and (2), otherwise known as a "VICAR" offense.  Folch and Miranda were each sentenced to multiple, concurrent terms of life imprisonment, while Andino was sentenced to a term of imprisonment of fifteen years.

All three appellants argue that the evidence is insufficient to support one or more of their convictions.  Folch and Miranda also bring challenges to the District Court's jury instructions.  Folch additionally contends that an improper statement by the prosecution warranted a mistrial.  Finally, Andino

challenges his sentence as procedurally unreasonable.  We affirm across the board.

I.

Several decades ago, incarcerated persons in Puerto Rico founded ÑETA, also known as "La Asociación Pro Derechos y Rehabilitación del Confinado."  The stated purpose of the organization at the time was to advocate for the rights of inmates in the Puerto Rico prison system.  But, following a criminal investigation into ÑETA's activities, federal authorities in 2016 returned an indictment in the District of Puerto Rico alleging that ÑETA had evolved into "a criminal organization whose members and associates engaged in drug distribution and acts of violence, including murder."

The indictment charged fifty individuals, including the three appellants, whom the indictment alleged were ÑETA members, with various offenses.  The government charged all three appellants with RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count One), and conspiracy to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count Two).  The government also charged Andino with committing a VICAR offense in violation of 18 U.S.C. § 1959(a)(1)-(2) (Count Three), and Folch and Miranda with committing a VICAR offense in violation of 18 U.S.C. § 1959(a)(1)-(2) (Count Four).  The appellants were also

charged in the alternative with aiding and abetting the VICAR offense of which each was charged in Counts Three and Four.[1]

The government's case at trial as to the three appellants was as follows:

ÑETA members both sold drugs supplied by the organization (the proceeds of which would go back to the organization) and sold drugs from their own personal supply by paying a fee, or "incentive," to the organization. ÑETA smuggled cell phones into prisons to help ÑETA members coordinate the drug trafficking operation, and for which ÑETA members could pay an "incentive" for personal use. And, ÑETA members carried out murders-for-hire on behalf of the organization.

In conducting these activities, ÑETA employed a sophisticated hierarchical structure, with the "Maximum Leadership" sitting atop the organization's hierarchy and overseeing its operations across Puerto Rico. The Maximum Leadership appointed "chapter leaders" at each correctional

---

[1] The government states in its briefing that Miranda was also charged under Count Three, but the indictment does not charge him under that Count, and the District Court did not instruct the jury to determine his guilt or innocence under that Count. A fourth defendant -- Freddie Sánchez-Martínez -- was tried jointly with the three appellants and was charged under Counts One, Two, and Three. He is not a party to this appeal.

institution, and chapter leaders in turn appointed leadership teams within each facility.

Andino, Folch, and Miranda each participated as a ÑETA member in ÑETA's drug trafficking operations. The government's case in that regard was that: Andino paid the drug incentive to sell his personal supply of marijuana, and paid the cell phone incentive by selling drugs on behalf of ÑETA; Folch helped coordinate ÑETA's drug and cell phone trafficking activities in the "Green Monster" prison by serving as an "advisor" for the chapter leadership at that facility; and Miranda served as a chapter leader for ÑETA at the Ponce Main prison, selling drugs and cell phones and collecting incentives.

Andino, Folch, and Miranda also were each involved in a murder-for-hire carried out by ÑETA. More specifically, the government tried to prove that: Folch paid for ÑETA to kill an inmate named Alexis Rodríguez-Rodríguez ("Rodríguez") at the Ponce Main prison; Miranda "seconded" the order to carry out that murder in his capacity as chapter leader at that prison; and Andino participated in carrying out, on behalf of ÑETA, the contract killing of Mario Montañez-Gómez ("Montañez"), an inmate in the Bayamon 1072 facility.

After a thirteen-day trial in the District of Puerto Rico, the jury found Folch and Miranda guilty of Count One (RICO

conspiracy), Count Two (drug conspiracy), and Count Four (the VICAR offense, with the predicate "crime of violence" being the murder of Rodríguez), and made special findings regarding the quantities of drugs for which Folch and Miranda were each responsible. As for Andino, the jury found him guilty of Count One (RICO conspiracy), but not of either Count Two (drug conspiracy) or Count Three (the VICAR offense, with the "crime of violence" being the murder of Montañez). Moreover, the jury did not in any of its special findings hold Andino responsible for any quantities of drugs.

The District Court entered judgments of conviction against both Folch and Miranda for each of the offenses for which they had been found guilty and sentenced each of them to concurrent terms of life imprisonment on each of their three convictions. The District Court also entered a judgment of conviction against Andino for RICO conspiracy and sentenced him to 180 months (fifteen years) of imprisonment.

These consolidated appeals followed.

## II.

We begin with the appellants' challenges to their convictions on sufficiency grounds. "We review such challenges de novo, when, as is the case here, the appellants preserved their claims below through motions for acquittal" under Federal Rule of

Criminal Procedure 29. United States v. Millán-Machuca, 991 F.3d 7, 17 (1st Cir. 2021) (citing United States v. Santos-Soto, 799 F.3d 49, 56 (1st Cir. 2015)). "We draw all reasonable inferences from the evidence in the light most favorable to the prosecution," id. (citing Santos-Soto, 799 F.3d at 56-57), and focus our inquiry on "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" id. (quoting United States v. Bailey, 405 F.3d 102, 111 (1st Cir. 2005)).

**A.**

Each of the appellants contends that his RICO conspiracy conviction must be reversed due to a lack of sufficient evidence. After laying out the elements of RICO conspiracy, we turn to the arguments that each appellant makes about why the evidence does not suffice to satisfy certain of the elements of that offense.

**1.**

Section 1962(c) of the RICO statute sets out the substantive RICO offense, which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). An "enterprise" is "any

- 8 -

individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

"[A]t least two acts of racketeering activity," 18 U.S.C. § 1961(5), that are related, occurred within ten years of each other, and pose a threat of continued criminal activity constitute a "pattern of racketeering activity."  Millán-Machuca, 991 F.3d at 18 (citing United States v. Chin, 965 F.3d 41, 47 (1st Cir. 2020)).  "Racketeering activity" is defined to include acts "involving murder . . . or dealing in a controlled substance" that are "chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1).

Section 1962(d) makes it unlawful to conspire to violate § 1962(c).  To prove the RICO conspiracy offense, "the government must prove that 'the defendant knew about and agreed to facilitate' a substantive RICO offense."  Millán-Machuca, 991 F.3d at 18 (quoting United States v. Leoner-Aguirre, 939 F.3d 310, 316 (1st Cir. 2019)).

The appellants were charged in the indictment with conspiring "to conduct . . . the affairs of [the] enterprise" -- ÑETA -- "through a pattern of racketeering activity consisting of multiple offenses involving: (1) [d]rug trafficking . . . [and] (2) [m]urder."  The District Court instructed the jury

- 9 -

as to the RICO conspiracy charges that the government needed to prove that each of the appellants "agreed to participate in the conduct of an enterprise with the knowledge that some members would engage in at least two acts of murder, or at least two acts of drug trafficking, or both . . . or any combination of them."

**2.**

The appellants first contend that "the government could not rely on the existence of [ÑETA] as an inmate group to prove the existence of a RICO enterprise" because "there were some members [of ÑETA] that did not sell nor used [sic] drugs." The appellants thus assert that the "evidence [did not] establish that [ÑETA] was an ongoing organization . . . with a common purpose that would distinguish the group of inmates performing illegal acts as a RICO enterprise."

Our decision in Millán-Machuca makes clear, however, that "nothing in the statutory definition of enterprise requires that the enterprise be defined solely by a criminal purpose." 991 F.3d at 20. Thus, RICO "extends to 'both legitimate and illegitimate enterprises.'" Id. (quoting United States v. Turkette, 452 U.S. 576, 580–81 (1981)).

Moreover, there is substantial evidence in the record of ÑETA's formalized membership practices, traditions, and hierarchical structure. That evidence more than suffices to

support the conclusion that ÑETA was at least a "union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), and so constituted an "enterprise" for the purposes of RICO.

**3.**

The appellants next argue that, even if the evidence suffices to show that ÑETA qualified as an "enterprise," the evidence does not suffice to show that its "activities . . . affect[ed] interstate or foreign commerce," 18 U.S.C. § 1962(c). The appellants focus on the evidence that the government put forward regarding the enterprise's drug trafficking. They contend that because it shows at most that the <u>kinds</u> of drugs that ÑETA dealt (including heroin and cocaine) are not produced in Puerto Rico, it does not suffice to show that the specific contraband seized in this case originated outside of Puerto Rico. For that reason, they contend, the interstate commerce element is not supported by sufficient evidence.

This aspect of the appellants' sufficiency challenge also runs up against our ruling in <u>Millán-Machuca</u>. There we held that "testi[mony] that cocaine and heroin are not produced in Puerto Rico . . . was enough to establish the slight effect on interstate commerce that is required for a RICO conviction." 991 F.3d at 20 n.4. We see no reason to conclude differently here.

- 11 -

**4.**

The appellants next direct our attention to what the record shows regarding the "pattern of racketeering activity" element. But, we are not persuaded by the appellants' sufficiency challenge on this score either.

The appellants first contend that their RICO conspiracy convictions must be reversed on sufficiency grounds because the government put forth evidence of ÑETA carrying out murders-for-hire to support the "pattern of racketeering" element. The premise of this argument is that murder-for-hire is not specifically barred by the Puerto Rico Penal Code and so is not "chargeable under State law" as the RICO statute requires a "racketeering activity" to be. See 18 U.S.C. § 1961(1); see also Yates v. United States, 354 U.S. 298, 312 (1957) (holding that a conviction must be reversed if the evidence in the record supports a legally impermissible ground as well as a legally permissible one and "it is impossible to tell which ground the jury selected").

But, in Millán-Machuca, which concerned different defendants charged under the same indictment that is at issue here, we reasoned that "[t]he lack of a specific murder-for-hire statute does not mean that murder-for-hire is not prohibited by Puerto Rico law," and that Puerto Rico's "general murder statute . . . plainly applies to the murder" of Rodríguez. 991 F.3d at 21.

- 12 -

Because that same reasoning equally applies here as to both the murder-for-hire of Rodríguez and the murder-for-hire of Montañez, this aspect of the appellants' sufficiency challenge concerning the "pattern of racketeering" element fails.

The appellants next contend that the evidence does not suffice to prove the "pattern of racketeering activity" element because the record contains no evidence of bribery even though the indictment identified bribery as being (along with drug trafficking and murder) among the three types of alleged racketeering acts that satisfied that element. Once again, however, Millán-Machuca poses an obstacle for the appellants. There, we explained that a similar challenge had no merit, so long as -- evidence of bribery aside -- there was other evidence in the record that sufficed to satisfy the "pattern of racketeering" element. 991 F.3d at 22 n.5. The mere fact that no evidence of bribery was put forward at the trial here thus provides no basis in and of itself for concluding that the evidence does not suffice to support the "pattern of racketeering" element in the appellants' cases.

Each appellant does also argue that, evidence of bribery aside, the evidence does not suffice to support his RICO conspiracy conviction because the evidence would not permit a rational juror to find beyond a reasonable doubt that the appellant "agreed to

participate in the conduct of [the] enterprise with the knowledge that some members would engage in at least two acts of murder, or at least two acts of drug trafficking, or both." But, the record contains sufficient evidence to show that each appellant was not only aware of, but also personally participated in, at least two acts of drug trafficking (which is a "racketeering activity") as a ÑETA member.

As to Andino, the record shows that one witness testified that, although Andino did not occupy a position of leadership within ÑETA, he was a ÑETA member. Furthermore, the record supportably shows that he paid an "incentive" to ÑETA for personal cell phone usage by selling heroin on behalf of the organization, and that he also paid an "incentive" to ÑETA to be able to sell marijuana on his own. Moreover, the record contains evidence that suffices to show that Andino engaged in the conduct just described more than twice.

Andino emphasized at oral argument both that the jury acquitted him of the drug conspiracy offense charged in Count Two and that the jury did not hold him responsible for any specific quantity of drugs in its special findings regarding his conviction for RICO conspiracy on Count One. He then went on to argue that the claimed inconsistency between the verdicts requires that we reverse the conviction on the RICO conspiracy charge. Controlling

precedent, however, is to the contrary. See United States v. Powell, 469 U.S. 57, 58 (1984) (reaffirming rule from Dunn v. United States, 284 U.S. 390 (1932), that "a criminal defendant convicted by a jury on one count [can]not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count").

As for Folch, he argues that there was a "lack of cohesiveness as to the evidence presented" regarding his involvement in drug trafficking. He emphasizes that he was described by witnesses as being a drug supplier not only to ÑETA members but also to non-members. As a result, he contends, the evidence suffices to establish at most that he "sent drugs to be sold and tallied for his own profit . . . not to profit the enterprise."

This argument is without merit because the government presented evidence that suffices to link Folch's drug trafficking activities to the conduct of the enterprise. The government did so via witness testimony that Folch was an "advisor" or "counselor" to the chapter leader at the "Green Monster" facility, that he was involved in multiple drug transactions on behalf of the organization in that capacity, and that he advised the chapter leader on the group's finances stemming from its trafficking operations.

- 15 -

Miranda contends that the evidence does not suffice to support his RICO conspiracy conviction because the evidence "did not establish that [he] was plainly integral to carrying out the enterprise's activities" due to evidence that "there was a movement to remove [him] from his alleged position as a chapter leader" at the Ponce Main prison. But, as we have explained, evidence can suffice to show that an individual participated in the activities of a RICO enterprise if it shows that the individual either "participated in the enterprise's decisionmaking" or "[was] plainly integral to carrying out" the directives of those with decisionmaking authority. United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994). And here, Miranda does not dispute that the evidence suffices to show that he was the chapter leader at the Ponce Main prison, and that he "participated in the enterprise's decisionmaking" in that capacity.

For example, one witness testified that, as chapter leader, Miranda "was responsible for everything that happened in the prison," and so was "in charge of, well, all the drug [sic]. Anything that came in, he had to know of." Meanwhile, testimony that some ÑETA members discussed replacing him as chapter leader hardly shows that he did not hold an important position within ÑETA's hierarchy.

**B.**

Having dispensed with the appellants' sufficiency challenges to their RICO conspiracy convictions, we now consider Miranda's sufficiency challenge to his conviction for violating 21 U.S.C. § 846. That offense makes it unlawful to conspire to violate 21 U.S.C. § 841(a)(1), which in turn makes it unlawful "to . . . possess with intent to . . . distribute . . . a controlled substance." To sustain the conviction, the government was required "to prove (1) the existence of a conspiracy to possess heroin, cocaine, and/or marijuana with the intent to distribute it, and (2) that [Miranda] knowingly and willfully joined in that conspiracy." Millán-Machuca, 991 F.3d at 19.

Miranda's sole argument in advancing this challenge is that the government failed to prove that "there was an agreement among [Miranda] and [ÑETA] members . . . to work together in the buying and selling of illegal drugs and that its purpose was allegedly to benefit the organization." We disagree. The same drug-related evidence that supports Miranda's RICO conspiracy conviction under Count One also supports his drug conspiracy conviction under Count Two, given that this collection of evidence supports the conclusion that Miranda personally participated in and helped to orchestrate ÑETA's drug trafficking operations at the Ponce Main prison in his capacity as chapter leader. See id.

- 17 -

at 19-20 (testimony that defendant helped "in overseeing the organization's drug trafficking operations" sufficed to support drug conspiracy conviction).

## C.

We come, then, to Folch's and Miranda's sufficiency challenges to their respective convictions for violating 18 U.S.C. § 1959(a), the VICAR offense. That offense has four elements:

> (1) the existence of an enterprise engaged in interstate commerce; (2) that enterprise engaged in "racketeering activity," (3) the defendant committed a crime of violence . . . and (4) that crime of violence was committed as "consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."

Id. at 19 (quoting 18 U.S.C. § 1959(a)). The alleged "crime of violence" as to both Folch and Miranda pertained to the murder of Rodríguez.

Folch and Miranda contend that the evidence in the record does not suffice to satisfy the elements set forth above. But, as the government notes, Folch and Miranda were each charged not only with committing the VICAR offense as a principal, but also with aiding and abetting the commission of that offense by someone else. The government argues that the record supports Folch's and

- 18 -

Miranda's convictions on that alternative basis. Without by any means suggesting that the convictions may be affirmed solely based on the aiding and abetting theory, we agree.

To convict Folch and Miranda based on the aiding and abetting theory, the government had to prove that "1) the substantive offense was actually committed [by someone]; 2) the defendant assisted in the commission of that crime or caused it to be committed; and 3) the defendant intended to assist in the commission of that crime or to cause it to be committed." United States v. Gaw, 817 F.3d 1, 7 (1st Cir. 2016) (alteration in original) (quoting United States v. Davis, 717 F.3d 28, 33 (1st Cir. 2013)). The evidence that bears on the relevant elements here is no different from the evidence in Millán-Machuca, which affirmed the conviction of a member of ÑETA's Maximum Leadership -- Rolando Millán-Machuca ("Millán") -- of a VICAR offense predicated on the murder of Rodríguez at issue here. There, as in this case, the evidence sufficed to show that Millán gave a "directriz" for the murder of Rodríguez, a special kind of order that could only be given by a member of the Maximum Leadership and that ÑETA members were required to carry out and risked being killed if they did not. And, in that case, we explained that such evidence was sufficient to allow a rational juror to conclude both that Millán committed a crime of violence

and that he did so "to strengthen and maintain his position in the leadership" and so in aid of racketeering. Millán-Machuca, 991 F.3d at 21–22. Thus, we see no reason not to conclude that the evidence in this case also suffices to support the conclusion that "someone" -- in particular, Millán -- did "actually commit[]" the VICAR offense grounding the convictions at issue.

The key question as to both Folch and Miranda, then, is whether the evidence also suffices to support the conclusion that each of them "assisted in the commission of that crime or caused it to be committed" and that each of them "intended" to do so. Gaw, 817 F.3d at 7. We conclude that the evidence does so suffice.

Beginning with Folch, the evidence establishes that Folch paid Millán for the murder of Rodríguez, and so it is evident that the evidence thereby suffices to show that Folch "caused" that crime to be committed. As to whether the evidence also suffices to show that Folch "intended" to cause the commission of the VICAR offense at issue, we conclude that it does.

"[F]or purposes of aiding and abetting law," the "intent requirement [is] satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." Rosemond v. United States, 572 U.S. 65, 77 (2014). In this case, that "full knowledge" must include knowledge that those who committed the murder of Rodríguez

did so "for the purpose of gaining entrance to or maintaining or increasing position in" ÑETA.[2]  18 U.S.C. § 1959(a).

Here, one witness testified that Folch "convinced the Maximum Leadership, namely [Millán], to have members of [ÑETA] murder Rodríguez," and that he paid Millán to do it.  The evidence also suffices to show that Folch and Millán together called one of the ÑETA members who murdered Rodríguez -- Jose González-Gerena ("González") -- when there was a delay in carrying out the murder.  González himself testified that, on that call, Millán "scold[ed] [him] for the delay" in "doing what [Millán] had told [him] to do" and commanded González to "do that as soon as possible."  As a result, the evidence suffices to permit a rational juror to find beyond a reasonable doubt that Folch understood that Millán ordered González to carry out the murder in Millán's capacity as a member of the Maximum Leadership, and that, on the phone call, Millán leveraged that authority to demand that González carry out the order.  The evidence therefore suffices to support the conclusion

---

[2] Folch argues that to satisfy the intent requirement, the government needed to show that Folch not only had "full knowledge" of the principal's intent, but that he himself shared in that intent, i.e. that his "intent was to promote his cohorts [sic] membership in the enterprise."  But, the only case Folch cites in support of this proposition fails to support it, as it states only that "the defendant must have consciously shared some knowledge of the principal's criminal intent."  United States v. Ortero-Mendez, 273 F.3d 46, 52 (1st Cir. 2001) (emphasis added) (citing United States v. Loder, 23 F.3d 586, 591 (1st Cir. 1994)).

that Folch not only "actively participate[d] in the criminal venture" to murder Rodríguez, but also had "full knowledge" that the murder of Rodríguez was committed in aid of racketeering. The evidence therefore suffices to show that Folch intended to cause the commission of the VICAR offense. Cf. Gaw, 817 F.3d at 7–8 (affirming defendant's conviction for aiding and abetting honest services fraud because evidence was sufficient for rational juror to find that defendant "understood both that [the perpetrator] was using his position . . . to further the . . . transaction and that [the perpetrator] was being paid to do so from the proceeds of the transaction").

As for Miranda, the record shows that several witnesses testified that Miranda, as chapter leader for ÑETA in the facility in which the murder occurred, "seconded an order given to him by [Millán]" to carry out the murder of Rodríguez. In addition, one witness testified that by seconding the order, Miranda "let [the order] come through" and thereby "allow[ed] the murder to be committed." This testimony is consistent with the evidence in the record that shows that a chapter leader "controlled what happened within that chapter in that prison."[3]

---

[3] Miranda argues that the evidence that he "seconded" the order is irrelevant because he "did not have the authority to stop or revoke [the] order given by [Millán]." Miranda cites no

- 22 -

Moreover, one witness testified that on the night before the murder, Miranda supplied the ÑETA members who killed Rodríguez with the drugs that would be used to kill him. Meanwhile, another witness testified that, as part of a prearranged "strategy" to make the murder seem like an accidental overdose, Miranda gave Rodríguez mouth-to-mouth resuscitation immediately after the murder had been committed and then took Rodríguez to the medical area to receive medical attention.

This evidence more than suffices to support the "assisted in the commission" element insofar as the evidence also suffices to show that the VICAR offense occurred. In addition, this evidence supports the conclusion that Miranda understood that Millán gave the order to kill Rodríguez in his capacity as a member of the Maximum Leadership, given that Miranda then "seconded" that order in his capacity as chapter leader. The evidence therefore suffices to support the conclusion that Miranda had "full knowledge" that the predicate "crime of violence" was committed in aid of racketeering, and so that Miranda "intended" to aid in the commission of the VICAR offense. Accordingly, Miranda's

support, however, for the notion that someone who assists in the commission of a murder because they are required to by the rules of an organization has for that reason not aided and abetted the murder. Thus, we cannot agree that this fact alone precludes the evidence of Miranda "second[ing]" the order from supporting the conclusion that he thereby aided and abetted the murder.

sufficiency challenge to his VICAR conviction, like Folch's challenge to his, fails.

### III.

We now shift our focus to the alleged trial errors that Folch and Miranda each contends occurred. Here, too, we conclude that the challenges are without merit.

### A.

Folch and Miranda both take aim at their convictions for RICO conspiracy and the VICAR offense based on the District Court's supposed error in instructing the jury regarding the elements of murder under Puerto Rico law (an alleged "racketeering activity" for both the RICO conspiracy and VICAR offense counts). More specifically, Folch and Miranda argue that the District Court's jury instructions wrongly "included definitions [of murder] not found in the 2012 Puerto Rico Penal Code," which "resulted in a constructive amendment of [C]ounts [O]ne and [F]our of the indictment in violation of [the defendants'] right to be charged by a grand jury and of [their] right to be aware of the charges against [them]."

"A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by [the] prosecution or court after the grand jury has last passed upon them." United States v. de Leon-De la Rosa, 17 F.4th 175,

195 (1st Cir. 2021) (alteration in original) (quoting United States v. DeCicco, 439 F.3d 36, 43 (1st Cir. 2006)). When the challenge is preserved, "[a] constructive amendment is considered prejudicial per se and grounds for reversal of a conviction." United States v. Portela, 167 F.3d 687, 701 (1st Cir. 1999) (quoting United States v. Fisher, 3 F.3d 456, 463 (1st Cir. 1993)).

Folch and Miranda are right that "[a]n indictment may be constructively amended by jury instructions which have the effect of broadening the charges in the indictment." Id. at 701-02 (citing Stirone v. United States, 361 U.S. 212, 214-16 (1960)). Folch and Miranda have failed to show, however, that any of the portions of the jury instructions to which they point had such an effect. See id. at 702 ("Neither jury instruction at issue broadened the conspiracy charge; neither constructively amended the indictment.").

For the most part, Folch and Miranda do little more than identify instances in which the jury instructions departed from the precise wording of the Puerto Rico Penal Code with respect to the offense of murder. They even concede that some of those differences "are subtle." That the District Court's instructions did not parrot the statutory definition for murder fails on its own to show that the instructions were legally inconsistent with that definition. And that is significant because it is well

- 25 -

established that although a "trial court is obliged to inform the jury about the applicable law . . . within wide limits, the method and manner in which the judge carries out this obligation is left to his or her discretion."  Elliot v. S.D. Warren Co., 134 F.3d 1, 6 (1st Cir. 1998).

Folch and Miranda do argue that the jury instructions "define[d] intent in much broader terms than the 2012 Puerto Rico Penal Code," and thereby "expanded [its] definition."  But, the claimed inconsistency is illusory, because the definition of "intent" in the 2012 Puerto Rico Penal Code divides it into three categories that substantively align with the three types of intent that the District Court identified in the relevant portion of the jury instructions.[4]

Folch and Miranda separately argue that the jury instructions "expanded the premeditation instruction by adding 'motive,'" the proof of which they contend is required for some crimes in the 2012 Puerto Rico Penal Code, but not for murder.  In

_____

[4] Folch and Miranda also contend that the District Court, in providing its definition of "intent," erred by stating that "[i]n legal terms, we refer to the intention to kill as acting with 'malice,'" because the term "malice" is not found in the statute. However, Folch himself notes that immediately after introducing the term "malice," the District Court stated: "A person acted with 'malice' if he . . .", at which point the District Court then provided the three-part definition of "intent" that tracks the statutory definition.

the challenged instruction, however, the District Court stated that "[a]lthough the Government need not establish the motive for the murder of the victim, you may consider motive as evidence of premeditation." This explicit instruction that motive need not be established contradicts the contention that the challenged instruction somehow added a motive requirement.

## B.

Folch argues on his own that his RICO conspiracy and VICAR offense convictions must be vacated for the separate reason that the District Court erred when it used "ÑETA" and "the enterprise" interchangeably in the jury instructions. Folch argues that the District Court in doing so effectively instructed the jury that "ÑETA" was an "enterprise" even though the question of "whether [ÑETA] was an enterprise under RICO was for the jury to decide."

Folch points to no specific portion of the jury instructions in which the District Court's use of "ÑETA" amounted to an instruction that ÑETA was a RICO enterprise. Moreover, a review of the jury instructions shows that the District Court specifically instructed the jury on the definition of "enterprise" for the purposes of RICO, stating that "[a]n enterprise . . . must have an ongoing organization," that it "must have personnel who function as a continuing unit," and that it "includes legitimate

- 27 -

and illegitimate enterprises," and then clarified that "the Indictment in this case alleges that the enterprise was an organization known as [ÑETA]."

Folch also argues that his VICAR offense conviction must be vacated because the printed verdict form failed to include a question as to whether he committed the murder of Rodríguez "as consideration for" payment from ÑETA or in hopes of "gaining entrance to or maintaining or increasing position in" ÑETA.  18 U.S.C. § 1959(a).  This omission, he argues, would have allowed the jury to convict him of the VICAR offense even if the jury had concluded that he did not have the required motive.

Folch has failed to point to any authority, however, for the notion that there is a requirement that the jury make a specific finding in a special verdict form regarding that element. Indeed, the chief case Folch relies upon for support -- United States v. Ferguson, 246 F.3d 129 (2d Cir. 2001) -- itself declared that "the use of a special verdict form" is "a matter for the trial court's discretion."  Id. at 137.  Thus, Folch has failed to establish that, even in a case such as this one where the District Court explicitly instructed the jury as to all the elements of a crime, the District Court must nonetheless employ a special verdict form.  Cf. United States v. Edelkind, 467 F.3d 791, 795 (1st Cir. 2006) (holding that omission from verdict form of requirement that

defrauded institution be one that was federally insured was not prejudicial error because jury was instructed as to that element and all other elements of the charged crime).

## C.

The last claimed trial error again is raised only by Folch, who argues that his RICO conspiracy conviction must be vacated due to an allegedly improper statement by the prosecuting attorney at trial. The facts bearing on this challenge are as follows.

At closing argument, Folch's counsel argued to the jury that, while the indictment alleged that Folch was among those defendants who "acted as Chapter Leaders for [ÑETA]," and while the District Court instructed the jury that Folch was "alleged to have been [a] Chapter Leader[]," the evidence presented at trial did not support that conclusion. On rebuttal, the prosecuting attorney responded:

> [Folch's counsel] argues, oh, the Indictment says that my client is a chapter leader. Well, he was an advisor for the chapter leader. That is part of the chapter leadership. . . . So he was part of the chapter leadership <u>even though we don't have to prove that he was a chapter leader</u>. We only have to prove that he agreed that he or other persons would engage in a pattern of racketeering activity.
> And that's pretty simple. All we have to show is that [Folch], just like we have to show for all the defendants, <u>were members</u>

> [sic] of [ÑETA] and that they agreed that
> either they or someone else in the
> organization was going to engage in drug
> trafficking or murder.

(Emphasis added).

Folch objected and moved for a mistrial on the ground that the government committed prosecutorial misconduct by contending through the prosecutor's statements that it did not need to prove that Folch was a chapter leader as alleged in the indictment. The District Court denied that motion. We "review th[e] claim de novo to see whether the contested comment was improper -- and if yes, whether it was harmful, knowing that the harmfulness question turns on whether the comment 'so poisoned the well that the trial's outcome was likely affected, thus warranting a new trial.'" United States v. Freitas, 904 F.3d 11, 24 (1st Cir. 2018) (quoting United States v. Rodríguez, 675 F.3d 48, 62 (1st Cir. 2012)).

Folch styles this challenge as one of prosecutorial misconduct that deprived him of his right to a fair trial. He relies on precedent involving prosecutorial arguments that are "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." United States v. Figueroa, 900 F.2d 1211, 1215 (8th Cir. 1990) (quoting Berger v. United States, 295 U.S. 78, 85 (1935)). Folch's argument appears

to be that the prosecutor's comments were improper because the government "obtained an unfair advantage by allowing the court's instructions to contain references to Folch's alleged position in the enterprise, that could not be proven, and then arguing to the jury that they did not have to prove it."

The "position" that Andino allegedly held in the enterprise to which the jury instructions referred was that of chapter leader. But, even if we were to assume that the challenged statements by the prosecutor amounted to a legal argument that the jury did not need to find that Folch was a chapter leader to find him guilty of the charged offenses, Andino fails to explain why the statements by the prosecutor would provide a basis for deeming the challenge to have merit.

Folch relies in support of this challenge on <u>Figueroa</u>. But, that case is readily distinguishable. In vacating a conviction based on a prosecutor's statements, we noted that the district court there had issued a curative instruction that the prosecutor's challenged argument at trial was legally baseless. 900 F.2d at 1215-16. By contrast, in this case, the District Court reached no such conclusion regarding the prosecutor's statements. Nor has Folch explained how the statements at issue here are legally baseless or how, insofar as they are not, the convictions

must be vacated in consequence of them.  See United States v. Zannino, 895 F.3d 1, 17 (1st Cir. 1990).

Folch develops no argument, for example, that the evidence fails to suffice to permit the government to prove him guilty of the charged offenses unless the government can prove that he was a chapter leader.  And, we do not see how Andino could develop any such argument, given the evidence in the record that we have recounted above and that suffices to show that he is guilty of the RICO conspiracy and drug trafficking convictions based on his conduct as merely a member of ÑETA.

Moreover, Folch fails to develop an argument that, insofar as the evidence suffices to permit the jury to convict him of the underlying offenses without finding that he was a chapter leader, the convictions could not stand because they then would be the result of a prejudicial variance from the indictment occasioned by the prosecutor's statements.  See United States v. Alicea-Cardoza, 132 F.3d 1, 6 (1st Cir. 1997) (affirming conviction because variance was non-prejudicial when indictment alleged defendant was a "triggerman" but evidence proved that he was a "runner").  And, he does not explain how, in the absence of the statements giving rise to a prejudicial variance, there is any basis for deeming the statements by the prosecutor to be of a sort that would warrant vacating the convictions under our precedent.

**D.**

There remains only Andino's challenge to his sentence, which takes aim solely at its procedural reasonableness. See United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). The first aspect of the challenge concerns the District Court's consideration of conduct of which Andino had been acquitted and takes aim at the District Court's supposed reliance on findings relating both to the murder of Montañez and to his alleged involvement in drug trafficking on behalf of ÑETA. The second aspect of the challenge concerns the District Court's explanation -- or lack thereof -- for the chosen sentence. The challenge is without merit.

**1.**

The government recommended below that Andino receive a prison sentence of 20 years after determining that Andino's base offense level was 43 under the United States Sentencing Guidelines ("USSG").[5] The government does not dispute that to adopt that base offense level and follow the recommendation, the District Court needed to conclude that Andino "participated in the murder of Montañez" and apply § 2A1.1 of the Guidelines, even though the

_____

[5] As the government explained in its sentencing memorandum, the recommended Guidelines range for a base offense level of 43 is a life sentence, but the statutory maximum for Andino's conviction was 20 years of imprisonment.

- 33 -

jury had acquitted Andino of the VICAR offense that was premised on the murder of Montañez (Count III). Section 2A1.1 of the Guidelines "applies in cases of premeditated killing," as well as "when death results from the commission of certain felonies . . . e.g., murder in aid of racketeering." USSG § 2A1.1(a).

Andino argues that, accordingly, the record shows that the District Court premised the sentence on acquitted conduct in applying that guideline to his case. He then contends -- as he did below -- that it was error for the District Court to do so because the record does not suffice to show by a preponderance of the evidence that he engaged in that conduct. See United States v. Watts, 519 U.S. 148, 157 (1997).

As the government explains, "the relevant federal sentencing statute requires a reviewing court not only to 'accept' a district court's 'findings of fact' (unless 'clearly erroneous'), but also to 'give due deference to the district court's application of the guidelines to the facts." Buford v. United States, 532 U.S. 59, 63 (2001) (quoting 18 U.S.C. § 3742(e)). And, "the argument for deference peaks when," as here, "the sentencing judge has presided over a lengthy trial and is steeped in the facts of the case." United States v. Sepulveda, 15 F.3d 1161, 1200 (1st Cir. 1993).

Andino argues that the record shows that text messages and a call log from another inmate's cell phone that allegedly link Andino to the murder refer to him only as "Indio," a purported reference to his nickname "Indio Gladiola." Yet, he argues, the evidence also shows that there was another ÑETA member whose nickname was "Indio Muriel," and that no evidence was presented to show that the "Indio" referred to in those communications was in fact Andino. He then goes on to argue that the only other evidence regarding his participation in the murder amounts to testimony of "witnesses who heard from others that 'Indio' had participated in the murder," such that "the only other evidence corroborating these statements" would be the disputed communications. That being so, he contends, the District Court erred in finding by a preponderance that he participated in the murder and so erred in applying the guideline in question.

Andino is wrong, however, that "the only other evidence" linking him to the murder was the testimony of "witnesses who heard from others that 'Indio' had participated in the murder." Indeed, one witness testified that he had heard that "Indio Gladiola" had participated in the murder. Another witness testified, after confirming that the "Indio Gladiola that [he was] referring to" was "Jose Andino Morales," that Andino was among the group of inmates whom the witness personally confronted as the group was on

- 35 -

its way to commit the murder, and that Andino later expressed regret to him for Andino's role in the murder.

Andino makes no other argument for how the cell phone-related evidence is necessary to support the District Court's conclusion. Nor does he explain how the testimony that refers to him as more than just "Indio" does not independently suffice to support that conclusion. Thus, given the deference due to the District Court in assessing the record, we cannot conclude that the District Court erred in finding by a preponderance of the evidence that Andino participated in the murder of Montañez.

Andino also argued below, and he argues again on appeal, that the District Court erred by considering drug-related conduct in its sentencing determination even though the jury acquitted Andino of the drug conspiracy under Count Two and, in its special findings for his RICO conspiracy conviction under Count One, did not hold him responsible for any quantities of drugs. In so contending, Andino argues that the evidence regarding his involvement in drug trafficking does not suffice to meet the preponderance standard necessary to permit the District Court to consider this acquitted conduct.

It is not entirely clear how, according to Andino, the District Court's sentencing determination may be understood to have rested on a finding that he engaged in the drug-related

- 36 -

conduct. But, even assuming that the District Court considered Andino's drug-related conduct at sentencing, the challenge fails, given the presence in the record of the same drug-related evidence that we recounted in affirming Andino's RICO conspiracy conviction.

Andino also argues that the District Court could not consider his acquitted drug-related conduct at all in this circumstance because the jury made "special findings" that Andino was not responsible for any quantities of drugs, as opposed to simply a "general verdict" of acquittal. But, Andino cites no support for the contention that a district court may consider acquitted conduct only when dealing with a "general verdict" and not "special findings." We therefore reject this aspect of Andino's sentencing challenge as well.

**2.**

Andino separately challenges his sentence on the ground that the District Court erred by failing to "state in open court the reasons for its imposition of the particular sentence." Because Andino did not raise this objection below, our review is only for plain error, which means that Andino must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial

proceedings." United States v. Romero, 896 F.3d 90, 92 (1st Cir. 2018) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). Yet, Andino has failed on appeal "to even attempt to explain how the plain error standard has been satisfied." United States v. Severino-Pacheo, 911 F.3d 14, 20 (1st Cir. 2018). He has therefore "waived any appellate argument concerning the procedural reasonableness of his sentence" on this basis. Id. (citing United States v. Pabon, 819 F.3d 26, 33-34 (1st Cir. 2016)).

## IV.

The judgment of the District Court is **affirmed**.